# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| THE UNIVERSITY OF )<br>NORTHERN VIRGINIA, INC. )<br>Plaintiff, )<br>10021 Balls Ford Road )<br>Manassas, Virginia 20109 )<br>v. )<br> )<br>ACCREDITING COUNCIL FOR )<br>INDEPENDENT COLLEGES AND )<br>SCHOOLS )<br>Defendant. )<br> )<br> )<br>Serve: )<br>Kenneth J. Ingram )<br>Registered Agent )<br>3190 Fairview Park Drive, Suite 300 )<br>Falls Church, Virginia 22042 )  | Civil Action No. _1:07cv1057_ |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Pursuant to Fed. R. Civ. P. 65 and Local Rule 7, Plaintiff, the University of Northern Virginia, Inc. ("UNVA"), respectfully submits this Memorandum in support of its Motion for a Preliminary Injunction requiring Defendant, Accrediting Council of Independent Colleges and Schools (ACICS), to reinstate and maintain UNVA's accreditation as an institution of higher learning while this case is pending.  In support of its motion, UNVA states as follows:

### STATEMENT OF FACTS[1]

This is a suit for declaratory and injunctive relief, and damages, arising from the ACICS Council's denial of UNVA's accreditation.  Absent preliminary injunctive relief, UNVA and its students will sustain irreparable harm.

## The Parties

Established in 1998, UNVA operates a private educational institution that is licensed by the State Council of Higher Education for Virginia.   UNVA offers Bachelor of Science degrees, Master degrees, and a Doctorate degree in a variety of disciplines.   UNVA's main campus is in Manassas, Virginia, with four additional campuses located in Prague, London, Hong Kong, and North Cyprus.   In addition, UNVA has partnering contracts with several universities in foreign countries to provide UNVA courses and programs to those universities' students on their campuses (UNVA's "international partnerships").   UNVA offers American higher education to over 800 students at its Manassas campus in Virginia and over 400 students abroad.   Over 95 percent of UNVA's students are from foreign countries.

ACICS is a national accreditor of institutions of higher learning.   ACICS is a non-profit Virginia corporation located in Washington, D.C.   According to ACICS, "accreditation" is a "an independent appraisal of an institution during which the institution's overall educational quality (including outcomes), professional status among similar institutions, financial stability, and operational ethics are self-evaluated by peers."   ACICS is formally recognized to accredit institutions by the U.S. Department of Education and the Council of Higher Education Accreditation.

The aim of accreditation, as stated by ACICS, is to assure and enhance the educational quality of an institution.   ACICS has never disputed the quality of UNVA's educational programs.   ACICS's Accreditation Criteria outlines both its substantive standards for measuring an institution's qualifications for accreditation and its procedures for the accreditation process in the ACICS Accreditation Criteria.   The Accreditation Criteria provides that the ACICS Council

---

[1] The facts herein are set forth in the Verified Complaint filed contemporaneously with this motion.  The supporting declarations of Fay Ross Avery, Irena Djordjevic-Behery, and Mitchell R. Young are attached herein as "Exhibit

will consider all information and reports submitted during the accreditation process. One of the ways the ACICS Council gathers information is through a site visit to an institution, which is mandated by both the Accreditation Criteria and the U.S. Department of Education. The site visit team must report all facts observed during its visit with regard to how compliant an institution is with the Accreditation Criteria. The Accreditation Criteria requires the Council to take into account the site visit team's report as well as any material an institution submits in response to the report. The Council will then base its accreditation decision on the "extent of an institution's compliance" with the Accreditation Criteria. The ACICS By-Laws, which are incorporated in the Accreditation Criteria, note that equally important to granting accreditation is ACICS's goal to provide institutions with "expert guidance on how to improve and monitor their efforts." The Accreditation Criteria also documents the ACICS process for investigating complaints about an institution. ACICS's non-compliance with the standards and processes set forth in the Accreditation Criteria, By-Laws, and other legal standards of care is the subject of this action.

**Initial Accreditation**

In April 2003, UNVA applied for and was granted initial accreditation by ACICS. The initial accreditation was for the period of April 2003 to December 2006. Thereafter, ACICS also approved UNVA's four branch campuses overseas. UNVA paid ACICS substantial sums of money in the form of dues, fees, and other assessments. UNVA believed that the accreditation process would be governed by ACICS's accreditation policies and procedures, such as the Accreditation Criteria. In 2004, UNVA began to prepare for the ACICS accreditation renewal process by commissioning a self-study, which was overseen by a national authority on institutional planning. The Self-Study Report was submitted to ACICS. For the next two years,

---

A," "Exhibit B," and "Exhibit C" respectively.

UNVA developed procedures to monitor academic progress, modernized its administrative programs, and implemented numerous improvements at the cost of millions of dollars in order to meet and exceed ACICS's accreditation standards.  Among other things, UNVA committed to move to two new buildings, with over 52,000 square feet of state-of-the-art classrooms, added full-time faculty and administrative staff, and committed to purchase a state-of-the-art wireless and electronic network integration system.

### History of Unfair, Arbitrary Conduct by ACICS

After UNVA's initial accreditation, and while UNVA was engaged in the process of reaccreditation, ACICS breached its contractual and common law duties to UNVA to comply with its own rules in several respects.  Among other things, ACICS failed to follow its complaint procedures, and issued meritless "show cause" directives in violation of its procedural requirements.  This conduct shows bias within ACICS toward UNVA.

One particular area of this unfair, arbitrary conduct involves UNVA's international partnerships.  These are relationships that UNVA has established with foreign universities to offer courses and programs to the universities on their campuses.  When UNVA initially contracted with ACICS to become accredited, ACICS was supportive of UNVA's international partnerships.  ACICS even offered to assist and, for two years assisted, UNVA in obtaining foreign government approval of UNVA's courses and programs.  However, it soon became clear that ACICS lacked experience in dealing with international programs and that its own rules and guidelines did not address such international partnerships.  ACICS staff members also acknowledged the lack of guidance provided by the Accreditation Criteria for the international partnerships.  Despite its earlier supportive stance and its later admissions of ambiguities in its own rules, ACICS informed UNVA in late 2004 that UNVA's international partnerships

4

signified to ACICS that UNVA was operating in unapproved locations. ACICS then issued a "Show Cause" directive to UNVA for "advertising" its international partnership offerings, even though the rule ACICS cited as a basis for the violation did not address the international partnerships. While the illegitimate show cause directive was pending, ACICS refused to approve other pending UNVA submissions and ACICS demanded UNVA discontinue all of its previously ACICS-supported international partnerships. ACICS went on to force UNVA to pay a $5,000 appearance fee to address the illegitimate show cause directive, and fines totaling $5,000, monies that were not provided for under ACICS rules.

The UNVA-ACICS relationship was also damaged by the way ACICS interpreted its own rules with regards to UNVA. The Accreditation Criteria provides that ACICS will only investigate "legitimate complaints" about an institution. Furthermore, the Accreditation Criteria requires that ACICS notify an institution when it has received a legitimate complaint and allow the institution time to respond to any such complaint. ACICS violated that requirement by investigating vague and anonymous rumors about UNVA that did not satisfy the minimum requirements for a complaint. Throughout this period, ACICS charged UNVA a series of arbitrary fees and fines, which were not provided for under the rules. Likewise, ACICS charged UNVA to accredit UNVA's Doctorate of Business Administration without disclosing to UNVA that ACICS is not recognized by the United States Department of Education to accredit Doctorate-level programs.

### Arbitrary Denial of Reaccreditation

In August 2006, ACICS initially denied UNVA's reaccreditation application. However, as required by ACICS's regulations, UNVA's accreditation was extended through December 2006 in order to allow UNVA to submit further information in support of its appeal of the denial.

5

UNVA subsequently submitted extensive materials in support of its appeal. A hearing was held in November of 2006 before the ACICS Council. Following the hearing, ACICS informed UNVA by letter dated December 13, 2006 that it was extending UNVA's grant of accreditation and placing UNVA on probation pending a "full evaluation visit" of the institution to be conducted in May 2007. The December 2006 letter also identified alleged deficiencies of the institution and requested that UNVA submit certain information to ACICS by June 30, 2007.

In May 2007, an ACICS site review team visited UNVA and over the course of three days conducted a "full evaluation" of the entire institution. The ACICS site review team also reviewed all alleged deficiencies noted by ACICS in December 2006. The ACICS site review team memorialized its conclusions regarding UNVA in a site review report ("May 2007 Special Visit Report"). The May 2007 Special Visit Report was overwhelmingly positive; the ACICS site review team issued 388 favorable citations to UNVA as compared to only thirteen citations for areas needing improvement. Of the thirteen deficiency citations, three were new and had never been noted previously by ACICS despite numerous reviews.

UNVA worked diligently over the next two months to address all thirteen citations that the ACICS site review team had identified and in July 2007 submitted additional information addressing all thirteen citations. In addition, UNVA submitted two volumes of materials to address citations identified by ACICS in the December 2006 letter, even though the May 2007 ACICS site review team did not identify the majority of the December 2006 citations as still being an issue.

On August 3, 2007, UNVA appeared before the ACICS Council. UNVA entered the hearing confident that it had fully and satisfactorily addressed all remaining ACICS concerns. At the hearing, the Council asked no questions regarding the material submitted by UNVA and

6

the specific citations. Similarly, the Council did not advise UNVA that any further information was needed in support of the reaccreditation application.

On August 7, 2007, ACICS sent UNVA a letter denying the institution's application for reaccreditation. The August 2007 letter stated that ACICS had identified fifteen deficiencies of UNVA based on the Accreditation Criteria. The August 2007 letter identified five deficiencies that had not been identified by the ACICS site review team who conducted a full evaluation of the institution barely three months previously. The ACICS letter did not provide any citations to evidence in the record. With respect to six of the deficiency citations in the August 2007 letter, the ACICS site review team gave UNVA a favorable citation in the May 2007 Special Visit Report. Despite numerous requests, to this day ACICS has not explained the patent contradictions between the citations in the August 2007 letter and the May 2007 Special Visit Report.

Unbeknownst to UNVA at the time, before the August 2007 hearing ACICS staff members prepared internal documents known as "IRC Review Sheets" that discussed UNVA's qualification for accreditation. These IRC Review Sheets contained false statements about UNVA and its qualifications for accreditation. For example, one IRC Review Sheet stated that certain student transcripts could not be found when in fact the transcripts were available. There were other statements in the IRC Review Sheets that UNVA had not provided requested information when in fact it had. The IRC Review Sheets were not provided to UNVA before the August 3, 2007 hearing or the August 7, 2007 accreditation determination. As a result, UNVA had neither any notice that false information was being presented to the Council nor any opportunity to correct the inaccuracies and falsehoods. In addition, ACICS staff had off-the-record communications with the ACICS Council, and subsequently the Review Board, regarding

7

UNVA's accreditation. Because UNVA was not privy to those communications, it had no opportunity to respond to any information pertaining to UNVA's qualifications for accreditation that may have influenced the ACICS Council's or the Review Board's decision.

Upon receipt of the August 7, 2007 denial letter, UNVA immediately appealed the ACICS decision and a hearing was scheduled before the ACICS Review Board for October 2, 2007, leaving UNVA very little time to brief and prepare its appeal. When ACICS identified the "record," it listed for appeal, it identified the July 2007 IRC Review Sheets. UNVA requested a copy of the Review Sheets and discovered the inaccuracies in them; unfortunately, it was too late for UNVA to address and correct the inaccuracies as the ACICS Council had already issued its determination. In ACICS's brief submitted to the Review Board, ACICS cited to the July 2007 Review Sheets as evidence to be relied upon, evidence that contained patently false statement that UNVA was never shown or given an opportunity to address.

Before the Review Board hearing, UNVA also requested copies of any records of the off-the-record communications among ACICS representatives and the ACICS Council and/or the ACICS Review Board. Although ACICS acknowledged that off-the-record communications occurred, it refused to provide UNVA with the content of these communications.

A hearing was held before the ACICS Review Board on October 2, 2007. The Accreditation Criteria provides that the ACICS Review Board will not consider any evidence that was not in the record before the ACICS Council. However, the only question asked by the Review Board pertained to a matter not implicated by the August 7, 2007 letter – it pertained to a prior, meritless "show cause" that had nothing to do with the reaccreditation, reflecting that the Review Board considered information that was outside the record in violation of ACICS's own guidelines. Precisely what off-the-record information was provided to the Review Board, which

is supposed to be independent, and how it implicated the Review Board's decision, is unknown given ACICS's refusal to make that information available to UNVA. By letter dated October 5, 2007, the Review Board denied UNVA's appeal of the Council's decision. The denial did not address the substantial, patently inconsistent evidence in the record to the contrary. It is as if the Review Board ignored the inconsistencies and acted for reasons other than those in the August 2007 letter.

## ARGUMENT

### Standard of Review

The four-part balancing test for granting preliminary injunctive relief is laid out in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977). The *Blackwelder* test requires that a district court consider "(1) the likelihood of irreparable harm to the plaintiff if a preliminary injunction is denied, (2) the likelihood of harm to the defendant if a preliminary injunction is granted, (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003).

The two most important factors in applying the *Blackwelder* test are the irreparable harm to the plaintiff and the harm to the defendant. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353 (4th Cir. 1991). In the present case, the evidence will show that if a preliminary injunction is denied, UNVA will suffer irreparable harm to its business and reputation. In contrast, ACICS will suffer no harm if a preliminary injunction is granted. Clearly, the balance of the two most important factors tips decidedly in UNVA's favor.

If there is a decided imbalance of harm in favor of the plaintiff, then the standard is more relaxed than requiring the plaintiff to show "a clear likelihood of success." *Microstrategy v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). ACICS's conduct towards UNVA was

arbitrary, capricious, and unsupported by substantial evidence such that UNVA's federal

common law due process rights have been violated. Further, ACICS breached its Accreditation

Criteria and processes. The evidence will show that UNVA is likely to succeed on the merits.

Finally, UNVA will show that the public interest is satisfied by the grant of a preliminary

injunction in order to consider whether a national accreditor such as ACICS has failed to follow

its own procedures and is arbitrarily denying accreditation to qualified institutions like UNVA.

Therefore, under *Blackwelder*, injunctive relief is proper in this case.

### I. UNVA is incurring and will imminently incur further actual and irreparable harm if injunctive relief is not granted.

Unless ACICS is enjoined from revoking UNVA's accreditation, UNVA will suffer

actual imminent and irreparable harm as a direct result of ACICS's wrongful actions. "[A]s

Learned Hand observed, irreparability of harm includes the impossibility of ascertaining with

any accuracy the extent of the loss." *Blackwelder*, 550 F.2d at 197 (internal citations omitted).

Furthermore, loss of goodwill and harm to reputation are both "irreparable harms." *Fairfield*

*Resorts, Inc. v. Fairfield Mts. Prop. Owners Ass'n*, 2006 U.S. Dist. LEXIS 64468 (D.N.C. 2006).

Courts have recognized the irreparable harm visited upon a university due to loss of its

accreditation. In *Edward Waters College, Inc. v. S. Ass'n of Colleges & Schs., Inc.*, the court

converted a Temporary Restraining Order against an accrediting body into a preliminary

injunction, finding that irreparable injury would result if the institution's accreditation was

revoked. *Edward Waters College, Inc. v. S. Ass'n of Colleges & Schs., Inc.*, 2005 U.S. Dist.

LEXIS 39443 (M.D. Fla. 2005). The court observed that the institution's efforts "to preserve its

viability with its students, faculty, administration and the community will be at substantial risk."

*Id.*

In *Florida College of Bus. v. Accrediting Council for Indep. Colleges & School*, the court noted that the school's "reputation in the local community and academic community will be tainted [by losing its accreditation] even if it were later successful on the merits following a full presentation of the evidence" if ACICS's denial of accreditation were not enjoined. *Florida College of Bus. v. Accrediting Council for Indep. Colleges & Sch.*, 1996 U.S. Dist. LEXIS 20426, 10-11 (D. Fla. 1996).

The court issued a preliminary injunction to maintain a law school's accreditation with the American Bar Association while the merits case proceeded because the "loss of reputation and good will resulting from loss of accreditation could be very damaging to a law school." *Western State Univ. of S. Cal. v. American Bar Assoc.*, 301 F.Supp.2d 1129, 1138 (C.D. Cal. 2004).

Here, ACICS's arbitrary denial of accreditation will cause significant damage to UNVA's reputation and educational mission. It is extremely unlikely that current students who leave UNVA during this period of nonaccreditation will return once UNVA's accreditation is restored. (Avery Declaration, Exhibit A, ¶7). It is equally unlikely that UNVA can sustain its prior recruitment successes with new students. (Avery Declaration, Exhibit A, ¶¶6, 10). Past students will find their degrees have lost substantial value. (Avery Declaration, Exhibit A, ¶11). UNVA's reputation will be irreparably injured in the educational communities (both locally and abroad), with its neighbors, and with its current staff. (Avery Declaration, Exhibit A, ¶¶5, 8, 10).

The irreparable injury prong is also satisfied "when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994). UNVA's "customers" are its students. UNVA is able to attract students to its international campuses due

to the fact that it received its accreditation from a United States Department of Education approved accreditor like ACICS. (Young Declaration, Exhibit C, ¶¶5, 6). Without accreditation, UNVA cannot compete with accredited institutions overseas and the lack of accreditation will not only cause UNVA to lose the students at its foreign campus, it may result in the campuses having to shut down. (Young Declaration, Exhibit C, ¶6; Avery Declaration, Exhibit A, ¶5 ).

In Virginia, UNVA will suffer equal harm to its enrollment and retention efforts. (Behery Declaration, Exhibit B, ¶¶5-8). Prior to the wrongful denial of UNVA's reaccreditation, UNVA received the largest number of applications in its history for the Fall 2007 term. (Behery Declaration, Exhibit B, ¶5). When the ACICS's decision to deny UNVA accreditation was announced, UNVA suffered immediate harm. (Avery Declaration, Exhibit A, ¶8). Many admitted applicants for the Fall 2007 term did not want to enroll and prospective applicants dropped out of the admissions process. (Behery Declaration, Exhibit B, ¶7). The drastic downward trend is continuing. Applications for the Winter 2008 term are already down eighty (80) percent. (Avery Declaration, Exhibit A, ¶10; Behery Declaration, Exhibit B, ¶8). Furthermore, UNVA has been in the process of expanding to two new buildings and obtained a special exception with local authorities to have a campus at the property (Avery Declaration, Exhibit A, ¶8). The loss of accreditation not only will harm UNVA's reputation with the local community but UNVA is facing the default on many of its commitments, including the outstanding real estate contracts and the networking contract with CISCO Systems. (Avery Declaration, Exhibit A, ¶¶8, 10).

Finally, UNVA will be subject to harsh federal and state regulatory sanctions as a direct result of ACICS's unfair accreditation denial. Pursuant to U.S. Department of Education regulations, UNVA will face a more difficult regulatory hurdle to accreditation by another

accrediting body as a result of ACICS's denial of accreditation. 34 C.F.R. § 602.28. Virginia

law requires a degree-granting institution to be accredited in order to grant degrees in Virginia.

Va. Code § 23-276.4(B).

It is impossible to ascertain with any pinpoint accuracy the extent of harm to UNVA due

to loss of accreditation. Already the August 2007 denial decision has had a significant impact on

the number of applications and enrollment. Not only is UNVA damaged financially by the loss

of the tuition revenues for the current term and beyond, but UNVA's future as an educational

institution is jeopardized. UNVA is in danger of losing both its currently enrolled students and

prospective students. By the time UNVA succeeds on the merits against ACICS, it will be too

late. UNVA will have lost both current students and future students and the reputation it has

built over the years will be destroyed. Because of the loss in revenue, UNVA will be unable to

fulfill many of its commitments, such as the contract for the new buildings the Manassas campus

and its agreement with CISCO Systems to provide state-of-the-art networking technology for its

students.

The harm caused by ACICS's denial of reaccreditation is incalculable. The harm is

actual and imminent, not remote or speculative. The strong reputation that UNVA has worked to

build over the last few years will vanish. The goodwill that UNVA has built over the years, with

its emphasis on cross-cultural education, is in danger of being lost, both domestically and abroad.

UNVA will clearly suffer actual imminent and irreparable harm if this Court denies the

injunction.

**II. The requested injunctive relief will not harm ACICS.**

In contrast to the irreparable harm UNVA will suffer in the likely closure of its campuses,

no harm will result to ACICS if this Court grants the requested injunction. ACICS has granted

accreditation to UNVA in the past. Similarly, ACICS has extended UNVA's accreditation in the past. The requested injunctive relief will merely require ACICS to restore the status quo as of October 3, 2007, the effective date of the denial, by reinstating UNVA's accreditation. ACICS will not be harmed by what is, in effect, another extension of the accreditation it has already granted UNVA in the past. *See, e.g., Edward Waters College,* 2005 U.S. Dist. LEXIS at * 12-13 ("there has been no showing of harm to be suffered by defendant [accrediting organization].... The preliminary injunction would simply maintain the status quo until the case can go to trial"); *W. State Univ. of S. Cal. v. American Bar Assoc.,* 301 F.Supp.2d 1129, 1138 (C.D. Cal. 2004) ("The balance of hardships tips sufficiently in Plaintiff's [law school] favor at this early point.").

### III. UNVA has raised serious and substantial questions going to the merits of its claims such that the claims are fair ground for litigation and for more deliberate investigation.

When, as here, the balance of the harm unmistakably favors the granting of preliminary injunctive relief, a preliminary injunction should be granted if "the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Rum Creek Coal Sales,* 926 F.2d at 359 (citing *Blackwelder,* 550 F.2d at 195). This suit presents serious and substantial questions about whether the August 2007 denial letter was arbitrary and is not supported by substantial evidence. Specifically, serious questions exist about violation by ACICS of procedures set forth in ACICS Accreditation Criteria, violations by ACICS of the substantive standards set forth in ACICS Accreditation Criteria, and the failure of ACICS to offer reasons for numerous factual and substantial contradictions between the Council's citations and the record. All of these questions are a fair ground for litigation and for more deliberate investigation.

UNVA has asserted claims for breach of contract and the violation of its rules and procedures (Counts I and II), and the denial of its due process rights (Counts III and IV). UNVA paid substantial monetary consideration to ACICS with the expectation that ACICS would follow its by-laws and the Accreditation Criteria during the accreditation process. This creates a contractual relationship and a common law duty by ACICS to comply with its own rules. There is a history of arbitrary conduct by ACICS against UNVA in which ACICS failed to follow its own procedures and standards. The evidence will show that ACICS declined to follow its own Accreditation Criteria requirements for assessing fees and fines against UNVA, for investigating complaints against UNVA, and for processing UNVA's application for reaccreditation and appeal of the denial of reaccreditation. When UNVA applied to ACICS for accreditation and paid ACICS to undergo the accreditation process, UNVA reasonably relied on the fact that ACICS would fairly and consistently adhere to the Accreditation Criteria and By-Laws. UNVA has raised serious questions regarding procedural violations and substantive violations of ACICS rules.

Count I alleges ACICS failed to follow its own rules in several instances that were not directly related to the accreditation process. Specifically, ACICS

- investigated illegitimate complaints against UNVA in direct contravention with the procedures in the Accreditation Criteria. (Verified Complaint, ¶13(a));

- failed to notify UNVA of the complaints against the institution in violation of the procedures in the Accreditation Criteria. (Verified Complaint, ¶13(b));

- issued invalid "show cause" directives against UNVA in violation of the procedures in the Accreditation Criteria. (Verified Complaint, ¶13(d);

- forced UNVA to pay monetary "fines" despite the absence of any provision authorizing such fines in the Accreditation Criteria. (Verified Complaint, ¶13(e); 13(i));

- accepted a fee from UNVA to review UNVA's application for the Prague campus, and then failed to act on the application in a timely manner as provided by the Accreditation Criteria. (Verified Complaint, ¶13(f));

- after initially doing so, failed to provide support or assistance to UNVA in connection with its international partnerships, and then issuing a show cause relating to the partnerships and assessing fines, even though there was nothing in ACICS's rules addressing international partnerships. (Verified Complaint, ¶14);

- charged UNVA fees to accredit a Doctorate of Business Administration program without disclosing to UNVA that ACICS was not recognized by the U.S. Department of Education. (Verified Complaint, ¶13(i)).

Count II alleges a cause of action for failure to follow its own rules during the accreditation process. Among other things, ACICS:

- considered information, including the July 2007 IRC Review Sheets that contain false and inaccurate statements, which UNVA was not provided and did not have an opportunity to correct, that was not in the official record when making its accreditation decision in violation of the Accreditation Criteria. (Verified Complaint, ¶¶42-53);

- failed to review and consider the conclusions of the May 2007 site visit team in violation of the Accreditation Criteria. (Verified Complaint, ¶¶36-38, 57-58);

- failed to consider the voluminous materials that UNVA submitted in response to the May 2007 Special Visit Report. (Verified Complaint, ¶¶38-39);

- failed to supply reasons for the denial of accreditation or explain the patent contradictions between the May 2007 Special Visit Report and the August 2007 denial letter. (Verified Complaint, ¶¶54-69).

Count III is for violation of UNVA's common law due process rights. Courts have uniformly recognized claims against accrediting bodies for the violations of federal common law due process rights. *See, e.g., Thomas M. Cooley Law School v. American Bar Association*, 459 F.3d 705 (6th Cir. 2006). While courts have found that there is no private right of action under the Higher Education Act against accrediting bodies, "[t]he exclusive grant of federal jurisdiction by the Higher Education Act allows claims to be brought under the federal common law of denial of due process." *Fine Mortuary College, LLC v. Am. Bd. of Funeral Serv. Educ., Inc.*, 473 F. Supp. 2d 153, 157 (D. Mass. 2006).[2]

In determining what principles of due process to apply, the courts have looked to cases under the Administrative Procedure Act ("APA"), 5 U.S.C. §701, as a "framework" for reviewing the accreditation process. *Cooley*, 459 F.3d at 712. "Principles of federal administrative law supply the right perspective for review of accrediting agencies' decisions." *Chicago School of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Schools and Colleges*, 44 F.3d 447, 449 (7th Cir. 1994). In *Chicago School*, the court noted that the

---

[2] Count IV alleges a violation of UNVA's Constitutional due process rights. Recent case law holds that a "nominally private entity" may be a state actor when it is "entwined with governmental policies or when government is entwined in its management or control." *Brentwood Academy v. Tenn. Secondary School Athletic Assoc.*, 531 U.S 288 (2001); *see Mentavlos v. Anderson*, 249 F.3d 301 (4th Cir. 2001). UNVA recognizes that prior to these decisions, this court denied the claim that an accrediting body should be treated as a governmental entity. *Emory College of Puerto Rico, Inc. v. Accrediting Council for Continuing Educations & Training, Inc.*, 1997 U.S. Dist. LEXIS 23487 (E.D.Va. 1997). However, given the strong influence that the Department of Education wields over ACICS's policies and practices, in light of the more recent case law and the fact that ACICS is sufficiently

"accrediting agency is a proxy for the federal department whose spigot it opens and closes. If accreditation--which the Secretary of Education treats as a sort of license or certificate--were bestowed by the federal agency directly...the Administrative Procedure Act would govern judicial review." *Id.* The principles of administrative law, therefore, provide the right perspective for review of ACICS's decision.

The APA standard is whether an agency decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or reached "without observance of procedure required by law." *Id.* In the context of a challenge to an accreditation decision, this court has said that an accrediting body's decisions can be reviewed to determine if they are "arbitrary and unreasonable" and "whether they are supported by 'substantial evidence.'" *Emory College of Puerto Rico, Inc. v. Accrediting Council for Continuing Educations & Training, Inc.,* 1997 U.S. Dist. LEXIS 23487 (D.Va. 1997) (*citing Peoria Sch. Of Bus., Inc. v. Accreditation Council for Continuing Education and Training,* 805 F. Supp. 579, 583 (N.D. Ill. 1992)). "To find a decision to be 'arbitrary and capricious,' the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* at 4, n.1.

An abuse of discretion may be found when the agency's decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Thomas M. Cooley Law School v. the American Bar Association,* 376 F.Supp.2d 758, 773 (W.D. Mich. 2005) (*aff'd Thomas M. Cooley Law School v. American Bar Association,* 459 F.3d 705 (6th Cir. 2006)). Similarly, when an agency "entirely fail[s] to consider an important aspect of the problem," its ruling is "arbitrary

---

entwined with governmental regulation and control for it to be certified as an accrediting body, UNVA has also asserted a Constitutional due process claim.

and capricious" and, therefore, unlawful. *Jordan v. Lyng*, 659 F. Supp. 1403, 1415 (E.D. Va. 1987). The agency must examine the relevant data and articulate a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made." *Id.* Finally, notice and an opportunity to respond are "essential requirements of due process." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

An accrediting body's inconsistent interpretation of its own rules is problematic. *W. State Univ. of S. Cal. v. ABA*, 301 F. Supp.2d 1129 (C.D. Cal. 2004) (preliminary injunction granted to the institution amid the court's concerns that the accrediting body applied its rules inconsistently, interpreted its rules unreasonably, and failed to fully inform the institution of its "fluid" rule definitions). Courts focus on whether an accrediting body provides a fair and impartial procedure for review and whether the body has followed its own rules in reaching a decision. *Wilfred Academy of Hair & Beauty Culture v. Southern Ass'n of Colleges & Schools*, 957 F.2d 210, 214 (5th Cir. 1992); *Rockland Inst. v. Association of Indep. Colleges and Sch.*, 412 F. Supp. 1015, 1017 (C. D. Cal.1976). Then, the question is not whether an institution challenging an accreditation decision "had an opportunity to be heard, but whether [it] had a fair and effective opportunity to be heard." *W. State Univ.*, 301 F. Supp. 2d at 1137. Finally, a decision by an impartial tribunal is "a fundamental element of due process under any standard." *Fine Mortuary College*, 473 F. Supp. 2d at 159.

This is not a case of second guessing the denial of UNVA's accreditation. Rather, this is a case where there are serious questions about the arbitrary and unreasonable conduct by ACICS in denying UNVA accreditation, conduct that in many instances violated ACICS's Accreditation Criteria. There is a substantial factual basis of arbitrariness, including:

- ACICS's failure to follow its own standards and procedures during the UNVA accreditation process. (Verified Complaint, ¶¶42-70, 76, 77);

- ACICS's imposition of standards during the accreditation process that were not a part of the Accreditation Criteria. (Verified Complaint, ¶76);

- ACICS's failure to consider the entire record before denying accreditation. (Verified Complaint, ¶¶58-59, 76);

- ACICS's failure to disclose to UNVA all the information upon which the denial decision was based, including the July 2007 Review Sheets that were never provided to UNVA prior to the August 7, 2007 denial letter, and that contained patently false statements, to which UNVA was not given as opportunity to respond. (Verified Complaint, ¶42-51);

- ACICS's failure to provide any explanation for the August 2007 decision and the patent contradictions between the August 2007 letter and the May 2007 Special Visit Report. (Verified Complaint, ¶56-57);

- ACICS's failure to address any of the arguments UNVA made on appeal. (Verified Complaint, ¶66-70).

Not only does the evidence in the record not substantially support the denial of UNVA's accreditation, the substantial evidence in the record is to the contrary. In cases decided under the APA[3], if an agency offers an explanation for its decision "that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," then the agency decision is arbitrary and capricious. *Motor*

---

[3] "When proceeding under the exclusive grant of federal jurisdiction provided by the HEA...courts analyze a claim for violation of common law due process in a manner similar to the inquiry under the Administrative Procedure Act." *Fine Mortuary College, LLC v. Am. Bd. of Funeral Serv. Educ., Inc.*, 473 F. Supp. 2d 153, 157 (D. Mass. 2006).

*Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). An agency must "explain the evidence which is available, and must offer a rational connection between the facts found and the choice made." *Ohio River Valley Envtl. Coalition, Inc. v. Kempthorne*, 473 F.3d 94, 103 (4th Cir. 2006). As alleged in the Complaint (Verified Complaint, ¶56-57), there are patent inconsistencies between the record and the August 7, 2007 denial letter. ACICS has given no reasonable explanation for these inconsistencies.

This case stands in stark contrast to *Emory College of Puerto Rico,* a case in which this court denied the plaintiff institution's motion for a preliminary injunction and granted the defendant accrediting body's motion for summary judgment. 1997 U.S. Dist. LEXIS 23487. Unlike in the instant case, Emory was not claiming that there were procedural errors or that the defendant acted in a manner that was inconsistent with its own procedures. In fact, the court noted that defendant "acted in accordance with the law and powers conferred upon it." *Id.,* at 7. Based upon the opinion, Emory was challenging the weight of the evidence only. While the court gave deference to the accrediting agency's substantive determination, the court still considered the evidence and found "ample documentation" supporting the agency's conclusions. *Id.* Unlike in the present case, there is nothing in the opinion indicating that there was substantial evidence in the record directly contradicting the defendant's conclusions. UNVA will demonstrate that not only is there a lack of substantial evidence in the record to support ACICS's decision, but also that there is substantial evidence in the record that *contradicts* ACICS's decision.

Applying the same due process principles recognized in *Emory,* other courts have granted preliminary injunctive relief in accreditation cases. In *Florida College of Bus.*, the court granted a preliminary injunction against ACICS, the same defendant accrediting body that is present in

the instant case. *Florida College of Bus.*, 1996 U.S. Dist. LEXIS 20426 (D. Fla. 1996). In

*Florida College*, the ACICS Council found thirteen areas of noncompliance and determined that

the School's accreditation should be withdrawn. *Id.* at 3. Although the court ruled that there was

no evidence that ACICS failed to provide the College with fair and impartial procedures, it

nevertheless granted preliminary injunctive relief. The court found that there was merit to the

College's argument that two of the thirteen areas cited by ACICS were not supported by

substantial evidence. *Id.* at 7. On this basis alone, the court determined that the School had

shown a substantial likelihood of success on the merits. *Id.* at 10. As compared with *Florida

College*, UNVA has a much stronger likelihood of success on the merits. UNVA was cited for

fifteen areas of noncompliance. However, as opposed to showing that just two citations are

unsupported by substantial evidence, UNVA will demonstrate that no less than six citations are

directly *contradicted* by the ACICS site team report and the other citations are not supported by

substantial evidence.

　　　In *W. State Univ. of S. Cal. v. ABA*, the court granted a preliminary injunction barring the

American Bar Association from withdrawing Western's accreditation pending trial due to

"serious questions" as to the denial of Western's due process right to a fair and effective appeal.

301 F. Supp.2d 1129. Western contended that the ABA had interpreted its own rules

inconsistently, changing the definitions in order to deny Western an opportunity for an effective

appeal. *Id.* at 1136. Specifically, among other things, Western contended that it was not

afforded an opportunity to address factual errors in the Committee's action letter. *Id.* As noted

above, UNVA will demonstrate that ACICS interpreted its own rules in an inconsistent manner.

Similarly, as in *W. State Univ.*, UNVA was not given the IRC Review Sheets prior to the August

3, 2007 hearing before the ACICS Council and the subsequent denial letter of August 7, 2007, and was not provided the opportunity to address and correct factual errors in them.

In *Edward Waters College*, the Court found that the accrediting body's committee had provided the College with only "a very brief opportunity to be heard" about a specific negative incident at the College. *Edward Waters College*, 2005 U.S. Dist. LEXIS 39443 at 33. Furthermore, the Court found that the Committee's ultimate decision regarding accreditation was based on whether the College was compliant with several broader issues. *Id.* However, the College was not given notice that the Committee would be considering these broader issues or that the College would be called on to answer questions about the issues. *Id.* The Court found that this "lack of notice and virtually impossible time constraints" of the hearing deprived the College of any "meaningful opportunity to be heard." *Id.* Similarly, UNVA was not given notice about the content of the IRC Review Sheets and off-the-record substantive conversations before the August 3, 2007 Council hearing and was not afforded the opportunity to respond. Nor was UNVA aware that UNVA's compliance was being based on accreditation criteria that the May 2007 site review team stated in its report UNVA had satisfied.

UNVA presents serious and substantial questions about whether ACICS breached its contractual and common law duties to UNVA, whether UNVA's common law due process rights have been violated, whether ACICS is in violation of its own procedures, whether ACICS's decision is unsupported by substantial evidence in the record, and whether ACICS's decision is arbitrary and capricious. UNVA will likely succeed on the merits in this action. The issuance of injunctive relief is appropriate until such time as the final determination can be made.

### IV.  An Order prohibiting ACICS from revoking UNVA's accreditation is in the public interest

The public interest will be served by an order from this Court prohibiting ACICS from revoking UNVA's accreditation.  In *Blackwelder*, the Court noted that "[o]ne reason for the more lenient interlocutory relief standards, as opposed to those governing motions for stays pending appeal, is the 'public interest' in preserving the status quo ante litem until the merits of a serious controversy can be fully considered by a trial court." *Blackwelder*, 550 F.2d at 197.  In the accreditation context, courts have held that "[t]he public's interest in prompt, fair and accurate accrediting information is not served if the accrediting agency does not observe a school's due process rights during the accreditation process." *W. State Univ.*, 301 F. Supp. at 1138.

ACICS is recognized by the United States Department of Education and the Council for Higher Education Accreditation ("CHEA").  ACICS has adopted By-Laws and an Accreditation Criteria that prescribe its standards for accrediting institutions.  It is in the public interest for ACICS to follow its own standards, and that of the Department of Education and CHEA when evaluating institutions.  UNVA's claims against ACICS raise serious concerns that ACICS is disregarding its own procedures and standards.  This raises the issue that a federally approved institution like ACICS is acting in an unreasonable manner.  The public interest is served by enjoining ACICS from revoking UNVA's accreditation until this matter can be investigated.  In addition to ensuring nationally recognized accreditors fairly evaluate institutions, the public interest is also served by protecting UNVA's graduates and current students from having their school's accreditation removed arbitrarily and capriciously.  Preserving the current status quo can only serve the public interest.

## CONCLUSION

For the foregoing reasons, UNVA requests that the Court grant its Motion for a

Preliminary Injunction against ACICS and require ACICS to:

1. reinstate and maintain UNVA's accreditation while this suit is pending; and

2. provide public notice of UNVA's reinstatement, including but not limited to notice on

    ACICS's website and publications.


Respectfully submitted,

THE UNIVERSITY OF NORTHERN VIRGINIA, INC.
By counsel

LECLAIRRYAN
A Professional Corporation


By:    _____
R. Scott Caulkins (VSB No. 23584)
Lee E. Goodman (VSB No. 31695)
Joanna L.  Faust (VSB No. 72930)
225 Reinekers Lane, Suite 700
Alexandria, Virginia 22314
(703) 684-8007 (Telephone)
(703) 684-8075 (Fax)
    *Counsel for Plaintiff*