**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| THE UNIVERSITY OF NORTHERN VIRGINIA, INC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No.: 1:07cv1057 ) |
| ACCREDITING COUNCIL FOR INDEPENDENT COLLEGES AND SCHOOLS, | ) ) ) ) |
| Defendant. | ) ) ) |

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Defendant Accrediting Council for Independent Colleges and Schools (hereinafter "ACICS" or the "Council"), by and through its undersigned counsel, hereby submits its Memorandum of Points and Authorities in Opposition to Plaintiff The University of Northern Virginia, Inc.'s (hereinafter "UNVA") Motion for Preliminary Injunctive Relief.[1]  In support of its Opposition, ACICS also relies upon the Declaration of Sheryl Moody, the Executive Director of ACICS, and the substantial record of proceedings before ACICS and the ACICS Review Board relating to Plaintiff.

## INTRODUCTION

UNVA is a proprietary educational institution formerly accredited by ACICS.  On August

---

[1] Defendant notes that it files this response before the expiration of its time within which to respond to the Complaint in this matter.  The Complaint in this action was served on October 25, 2007, making Defendant's response due on or before November 14, 2007.  Defendant files this Opposition in accordance with the Court's briefing and hearing schedule, and intends to separately file its response to the Complaint in accordance with the Federal Rules of Civil Procedure.

7, 2007, ACICS issued a decision affirming the denial of UNVA's application for a new grant of accreditation.  UNVA pursued an administrative appeal of that decision, and an appeal hearing was held before a panel of the ACICS Review Board on October 2, 2007.  The Review Board issued its ruling affirming the Council's August 7, 2007 decision on October 5, 2007.  Plaintiff now seeks a preliminary injunction from this Court directing ACICS to reinstate its accreditation.

A preliminary injunction is not warranted in this situation.  The decision to grant or deny UNVA's request must be determined by the "flexible interplay" of four factors:  (1) the risk of irreparable harm to the plaintiff if relief is denied; (2) the risk of harm to the defendant if relief is granted; (3) the substantial likelihood of the plaintiff's success on the merits; and (4) the interest of the public.  *See Religious Technology Center v. Lerma,* 897 F.Supp. 260, 262 (E.D. Va. 1995) (*citing Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189, 196 (4th Cir. 1977)).

Such an analysis ordinarily begins with an assessment of the balance of harms.  If UNVA does not demonstrate that the balance of hardship tilts decidedly in its favor, there must be a "strong showing of likelihood of success" by "clear and convincing evidence" to justify imposition of a preliminary injunction.  *MicroStrategy Inc. v. Motorola, Inc.,* 245 F.3d 335, 340 (4th Cir. 2001) (*quoting Direx Israel, Ltd. v. Breakthrough Med. Corp.,* 952 F.2d 802, 818 (4th Cir.1991)); *see also White-Battle v. Democratic Party of Virginia*, 323 F.Supp.2d 696, 701 (E.D.Va. 2004) (stating that "if the balance of hardships is relatively equal, then the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success.") (internal quotations omitted); *Krichbaum v. U.S. Forest Service*, 991 F.Supp. 501, 502-3 (W.D.Va. 1998).

UNVA has not, and cannot, establish that the balance of harms "tips decidedly" in its

favor.  Further, both the record before this Court and the applicable law establish that UNVA simply cannot prevail on the merits of its claim.  The voluminous record establishes that UNVA was provided an extended period of time to demonstrate compliance with the *Accreditation Criteria* and was given a fair and impartial review by its peers, but failed to meet ACICS's standards of accreditation.  *See Peoria School of Business, Inc. v. Accrediting Council for Continuing Educ. and Training*, 805 F.Supp. 579 (N.D.Ill. 1992).  Accordingly, a preliminary injunction is not legally appropriate in this cause.

A preliminary injunction is not even necessary to promptly resolve this litigation.  Since the review of an accrediting agency action is not *de novo* but is instead based on the record before the agency, this case is appropriate for prompt cross motions for summary judgment and a prompt disposition in accordance with the procedures set forth in Rule 56 of the Federal Rules of Civil Procedure.  Indeed, ACICS intends to file a motion to dismiss, or in the alternative for summary judgment in the near future.  Accordingly, the motion for preliminary injunction should be denied.

## BACKGROUND

**A.**     **The Accrediting Council for Independent Colleges and Schools ("ACICS")**

ACICS, which dates back to 1912, is a not for profit non-stock corporation organized under the laws of Virginia exclusively for educational purposes, with its current principal place of business in the District of Columbia.  (*See* Moody Declaration at ¶ 3, filed contemporaneously herewith.)  ACICS has been granted 26 U.S.C. §501(c)(3) tax exempt status by the Internal Revenue Service as a nonprofit organization operated exclusively for educational purposes. (Moody Declaration at ¶ 3.)  ACICS has been recognized since 1956 by the U.S. Secretary of Education as a reliable authority concerning the quality of education and training offered by the

educational institutions that it accredits.  (Moody Declaration at ¶ 3.)  The scope of ACICS's recognition includes private postsecondary institutions offering certificates or diplomas and postsecondary institutions offering associate's, bachelor's, or master's degrees in programs designed to educate students for professional, technical, or occupational careers, including those that offer those programs via distance education.  (Moody Declaration at ¶ 3.) ACICS accredits 685 postsecondary institutions enrolling more than 560,000 students.  (Moody Declaration at ¶ 3.)

ACICS has been and continues to be a voluntary group of educational organizations affiliated for the purpose of establishing and operating an educational accrediting agency in the field of career training.  (Moody Declaration at ¶ 4.)  To aid in the process of accreditation and consistent with its nonstock corporate responsibilities and the criteria of the Department of Education, ACICS has promulgated its *Accreditation Criteria: Policies, Procedures, and Standards*.  (Moody Declaration at ¶ 4 and Exhibit A thereto.)  In addition, ACICS is governed by its Bylaws, which are also incorporated into the *Accreditation Criteria*.  (Moody Declaration at ¶ 4, and Exhibit B thereto.)  These and ACICS's other policies and procedures are regularly reviewed by the Department of Education for consistency with the recognition criteria of the United States Secretary of Education.  (Moody Declaration at ¶ 4.)

The accreditation functions of ACICS are carried out by the Council, which consists of 14 Commissioners.  The Council includes Commissioners representing both non-degree and degree-granting institutions, as well as two Commissioners drawn from the public.  The day-to-day affairs of ACICS are overseen by the Executive Director, who serves as its Chief Administrative Officer.  (Moody Declaration at ¶ 5.)

The Council enacts, interprets, and applies ACICS's policies and procedures to each

institution that has been accredited by it or that seeks accreditation.  The Council has the sole and final authority to determine whether an institution is in compliance with ACICS's standards and whether accreditation should be granted, denied or withdrawn.  (Moody Declaration at ¶ 6.)

**B.**     **The Accreditation Process**

Accreditation is a process of peer review in which an institution applies for accreditation to an accrediting body which may accredit the institution for a period of time based on evaluation of the institution's compliance with a series of criteria.  *See Peoria School of Business, Inc. v. Accrediting Council for Continuing Educ. & Training,* 805 F. Supp. 579 (N.D. Ill. 1992); *Parsons College v. North Cent. Ass'n of Colleges and Secondary Schools,* 271 F. Supp. 65, 73 (N.D. Ill 1967).  The standards of accreditation are not guides for the laymen but for professionals in the field of education.  *See Parsons College*, 271 F. Supp. at 73.

The process of accreditation was established long before the Higher Education Act of 1965 as a form of peer review among institutions of higher learning.  *See id.* at 66.  The relationship between the accrediting association and the educational institution is one of private membership contract between an association and its members.  *See generally Peoria School of Business Inc.*, 805 F.Supp. 579; *Parsons College*, 271 F.Supp. 65; *see also Gottlieb v. Economy Stores, Inc.*, 102 S.E.2d 345, 352 (1958).

The process for a renewed grant of accreditation is set forth in ACICS's *Accreditation Criteria: Policies, Procedures, and Standards*.  (Moody Declaration at ¶ 7.)  It includes a preliminary review of the institution, submission of an application for accreditation, submission of a self evaluation analysis, a site visit by an evaluation team, which prepares a report for review and response by the institution, and a final determination by the Council.  (Moody Declaration at ¶ 7.)  The burden of proof of accredibility rests with the institution.  (Moody Declaration at ¶ 7.)

If the Council denies the application, the institution has an administrative appellate process available to it.  (Moody Declaration at ¶ 8.)  The first stage in the appellate process is an appearance at a hearing before a panel of the Council.  (Moody Declaration at ¶ 8.)  The institution may file written materials in advance of the hearing and may be represented at the hearing by legal counsel.  (Moody Declaration at ¶ 8.)  After the hearing, the panel presents its findings and recommendations to the full Council, which then makes a final decision.  (Moody Declaration at ¶ 8.)

If the Council affirms the denial of accreditation, the institution may then appeal to the Review Board.  (Moody Declaration at ¶ 9.)  The Review Board is a separate, independent appeals body established by ACICS for the purpose of hearing appeals from adverse Council decisions.  (Moody Declaration at ¶ 9.)  The institution is again given the opportunity to submit written materials in support of its appeal, and the Review Board is also provided with the entire record that was before the Council at the time its decision was made.  (Moody Declaration at ¶ 9.)  The institution and the Council are entitled to be represented by legal counsel throughout the Review Board process.  (Moody Declaration at ¶ 9.)  The Review Board may affirm the Council's decision or remand the matter back to the Council.  (Moody Declaration at ¶ 9.)

C.      **Recognition**

Defendant ACICS is a nationally recognized accrediting agency by the United States Department of Education.  (Moody Declaration at ¶ 3.)  To achieve that recognition, ACICS periodically goes through a process that is similar to that of institutional accreditation by accrediting agencies.  The Secretary of the Department of Education's Recognition Procedures

for National Accrediting Bodies are set forth in 34 C.F.R. § 602 *et seq.*[2]  If the Secretary's

recognition is granted, the accrediting agency is included in a list published by the Secretary in

the Federal Register. *See* 34 C.F.R. §602.1.  Recognition by the Secretary means there has been a

finding that the agency is a reliable authority regarding the quality of education or training

offered at a particular institution. *See id*.  The Secretary's recognition is granted and the agency is

included on the list only when the accrediting agency meets the criteria established by the

Secretary.  *See id*.  It is critically important to maintain recognition status because almost all

ACICS-accredited institutions rely on recognition to maintain their eligibility to participate in

federal student aid programs.

### D.     The University of Northern Virginia

UNVA's main office is located in Manassas, Virginia, with approved learning sites in

Annandale and Centreville, Virginia, and approved branch campuses in Prague, Czech Republic,

Hong Kong, Cyprus, and London, England.[3]  UNVA's initial grant of accreditation was awarded

by ACICS in April 2003 and ran through December 31, 2006.  UNVA submitted its application

for a new grant of accreditation on or about May 1, 2006.  (Moody Declaration at ¶ 10.)

Pursuant to ACICS's procedures, a new grant evaluation team visited the institution in

May 2006 and prepared and submitted its New Grant Evaluation Report.  (Moody Declaration at

¶ 12.)  The evaluation team identified 46 citations of noncompliance with the Accreditation

Criteria.  (Moody Declaration at ¶ 12.)  On or about July 14, 2006, UNVA submitted its

documentation and written response to the New Grant Evaluation Report.  (Moody Declaration at

---

[2] The Secretary's recognition criteria do not create a private right of action against private parties.  *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

[3] UNVA is a for profit enterprise, and its Chancellor, Dr. Fay Avery, is a shareholder.  *See* October 31, 2007 Deposition of Dr. Fay Avery.

¶ 12.)   The report and supporting materials, along with UNVA's responsive materials, were reviewed by the Council at its August 2006 meeting, resulting in findings by the Council of 29 citations of noncompliance with the Accreditation Criteria.  (Moody Declaration at ¶ 12.)  Based upon those findings, the Council decided to deny the institution's application for a new grant of accreditation.  (Moody Declaration at ¶ 12.)  On August 11, 2006, the Council advised UNVA of its findings and decision in writing, and further advised UNVA of its right to appeal that decision.  (Moody Declaration at ¶ 12.)

UNVA notified the Council that it would exercise its right to appeal the August 11, 2006 decision, and that it would do so in person at the Council's next meeting.  (Moody Declaration at ¶ 13.)  On or about November 7, 2006, UNVA submitted its documentation and written response to the August 11, 2006 decision, and the appeal hearing was held before a panel of the Council on November 29, 2006.  (Moody Declaration at ¶ 13.)  UNVA was represented at the appeal hearing by Dr. Fay Avery, Chancellor, Dr. Ray Hackett, Vice President for Academic Theaters, and Stanley Freeman, Esquire, UNVA's then legal counsel.  (Moody Declaration at ¶ 13.)

As a result of its thorough and considered review of all materials before it, the Council on appeal found 22 remaining citations of violations of the Accreditation Criteria.  (Moody Declaration at ¶ 14.)  In an effort to provide the institution with every opportunity to come into compliance, however, the Council deferred the denial of a new grant of accreditation for two Council meeting cycles and placed the institution on probation with an extended grant to August 31, 2007.  (Moody Declaration at ¶ 14.)  Absent that extension by the Council, UNVA's original grant of accreditation would have expired on December 31, 2006.  (Moody Declaration at ¶ 14.) The Council notified the institution of its decision in writing on December 13, 2006.  (Moody Declaration at ¶ 14.)  The December 13, 2006 notice specifically provided that

the institution will have until June 30, 2007 to respond to the areas that are
identified within this letter.  The institution will <u>also</u> be required to undergo a full
evaluation visit by a team during May/June 2007 at the main campus located in
Manassas, Virginia.  In order for the Council to lift the probationary action, the
institution must submit the following information by June 30, 2007, and
demonstrate full compliance with all remaining areas of non-compliance, <u>as well
as</u> any areas of deficiency that are found by the team during the May/June 2007
visit.  (emphasis added).

(Moody Declaration at ¶ 14.)  The Council thus made it clear that the institution would have to

respond to the citations contained in that letter as well as any that may result from the May/June

2007 visit.  (Moody Declaration at ¶ 14.)

As announced in the December 13, 2007 notice, an ACICS team of evaluators conducted

a special visit on May 29 - 31, 2007, and submitted their findings in their Special Visit

Evaluation Report.  (Moody Declaration at ¶ 15.)  The May 2007 team noted 14 citations of

violations of the Accreditation Criteria.  (Moody Declaration at ¶ 15.)  On June 29, 2007, the

institution submitted its response to the December 13, 2006 notice, and on July 13, 2007, the

institution submitted its response to the May 2007 Special Visit Evaluation Report.  (Moody

Declaration at ¶ 15.)  A second hearing before a panel of the Council was then held on August 3,

2007.  (Moody Declaration at ¶ 15.)  UNVA was represented at that hearing by Dr. Fay Avery,

Chancellor, Dr. Joseph Drew, President of its Manassas campus, Dr. Benjamin Davis, Associate

Vice President for Academic Affairs, and Dr. Ata Doven, Director for Accreditation.  (Moody

Declaration at ¶ 15.)

Upon careful consideration of all testimony and information in connection with the entire

new grant process, which extended over a year in this case because of the Council's decision to

allow the institution additional time to come into compliance, the Council found 15 remaining

citations of noncompliance with the Accreditation Criteria unaddressed as of August 2007.

(Moody Declaration at ¶ 16.)   Nine of those citations remained from the December 13, 2006 notice, and the additional 6 were noted during the May 2007 special visit.  (Moody Declaration at ¶ 16.)  Accordingly, the Council decided to affirm the denial of a new grant of accreditation and notified UNVA of its decision in writing on August 7, 2007.  (Moody Declaration at ¶ 16.)  The Council further notified UNVA of its right to appeal the decision to the Review Board.  (Moody Declaration at ¶ 16.)

UNVA notified the Council of its desire to appear before the Review Board, and a hearing date was set for October 2, 2007.  (Moody Declaration at ¶ 17.)  UNVA submitted its appeal brief on September 17, 2007, and ACICS filed its brief in response on September 25, 2007.  (Moody Declaration at ¶ 17.)  The hearing before the Review Board was held on October 2, 2007, at which UNVA was represented by its counsel, R. Scott Caulkins, Esquire and Lee Goodman, Esquire, as well as several representatives from the institution.   ACICS was represented before the Review Board by its undersigned counsel.  (Moody Declaration at ¶ 17.)  Upon consideration of all evidence before it, the Review Board affirmed the decision of the Council, which affirmance was communicated to UNVA in writing on October 5, 2007.  (Moody Declaration at ¶ 17.)  UNVA's accreditation ended under ACICS's procedures on October 3, 2007.[4]  (Moody Declaration at ¶ 17.)

## ARGUMENT

### A.   UNVA Cannot Show The Requisite Elements For Injunctive Relief

"The grant of interim relief is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly

---

[4] It is worth noting that, as a result of the Council granting UNVA additional time to come into compliance with the standards and through the extension of accreditation during the appeal process, UNVA's accreditation was extended for approximately 10 months, to October 3, 2007, from its original expiration date of December 31, 2006.

demand it." *Steakhouse, Inc. v. The City of Raleigh, North Carolina*, 166 F.3d 634, 637 (4th Cir. 1999) (*citing Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991)). The proper analysis to be used in considering interlocutory injunctive relief is well settled in the Fourth Circuit. *Railway Labor Executives' Association v. Wheeling Acquisition Corp.,* 736 F. Supp. 1397, 1401 (citing *Blackwelder,* 550 F.2d 189). Such relief should only be granted if the moving party clearly prevails under the following four factors:  (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the preliminary injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *See Rum Creek Coal Sales, Inc. v. Caperton,* 926 F.2d 353, 359 (4th Cir. 1991).

UNVA cannot show that the balance of harms tips decidedly in its favor, and certainly cannot establish any likelihood of success on the merits.  Moreover, UNVA is seeking to reverse action which has already been taken, in which circumstance the already extraordinary authority to issue a preliminary injunction should be even more sparingly exercised.  *See Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1990).  Accordingly, as UNVA cannot meet its burden on the factors, the motion for preliminary injunction should be denied.

**B.   UNVA Cannot Show That It Will Suffer Irreparable Injury Unless The Injunction Is Issued**

In order to prevail on a request for injunctive relief, UNVA is first required to make a showing that it would suffer immediate, irreparable injury unless the requested injunction is issued. *See Direx Israel*, 952 F.2d at 812.  Courts in the Eastern District of Virginia require that irreparability of harm include the "impossibility of ascertaining with any accuracy the extent of plaintiff's loss." *Hanky v. City of Richmond,* 532 F.Supp. 1298, 1302 (E.D.Va. 1982); s*ee also*

*Hughes Network Systems v. Interdigital Com. Corp.*, 17 F.3d 691, 694 (4th Cir. 1994).   In addition, "the required 'irreparable harm' must be 'neither remote nor speculative, but actual and imminent.'"   *Direx Israel*, 952 F.2d at 812 (*citing Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989).

UNVA has speculated that its reputation will suffer, students may leave and not return, and it may not be able to recruit new students as effectively without ACICS accreditation.  *See* UNVA Memorandum at 10 - 13.   These allegations are either speculative or relate to calculable economic losses, or both.   Neither circumstance warrants injunctive relief.   Specifically, UNVA's assertion that the loss of accreditation may cause it to lose existing or prospective students amounts to an argument that it will suffer <u>economic</u> hardship due to a drop in enrollment.   This alleged economic loss establishes that UNVA cannot meet the required substantial showing of "irreparable harm."   *See Safeway Inc. v. CESC Plaza Ltd. Partnership*, 261 F.Supp.2d 439, 471 (E.D.Va. 2003) (finding injunction inappropriate, even where property right is infringed upon, where there is adequate remedy at law).   "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."   *First Hand Communications, L.L.C. v. Schwalbach*, 2006 U.S. Dist. LEXIS 46699, *10 (E.D.Va. 2006) (citations omitted).   Indeed, UNVA has sued for money damages in this case, giving rise to the clear possibility that adequate relief may be available in the ordinary course of litigation and further demonstrating that injunctive relief is not appropriate.

Further, UNVA's alleged harm is purely speculative and unsubstantiated.   Unlike many institutions of its kind, UNVA's students do not receive federal funding through Title IV of the Higher Education Act.   The loss of accreditation to those institutions also means the loss of

eligibility to receive Title IV funds, which results in an immediately identifiable harm.  In this case, however, there will be no such harm, as UNVA does not participate in that program.[5] Indeed, the principle case relied upon by UNVA in its brief, *Edward Waters College, Inc. v. The Southern Association of Colleges and Schools, Inc.*, 2005 U.S. Dist. LEXIS 39443 (M.D. Fla. 2005), was just such a case.  In that case, the court awarded a preliminary injunction in large part because the loss of accreditation would result in the loss of eligibility to participate in federal financial aid programs, over 90% of the students at that school received some form of federal financial aid, and that "critical federal funding of the school and its students may be immediately jeopardized" upon the loss of accreditation.  *Id.* at *3, *12.  The *Edward Waters* case, therefore, actually supports ACICS in this matter and has no bearing on the circumstances of UNVA's denied reaccreditation.[6]

UNVA's primary contention, then, is the conclusory and unsupported assertion that its "reputation" will suffer if its accreditation is denied.  The clear fact, however, is that UNVA's reputation for over a year prior to the denial of reaccreditation was as an institution in probationary status whose accreditation was very much in jeopardy.  UNVA's application for reaccreditation was initially denied in August 2006 (*see* Moody Declaration at ¶ 12 and Exhibit C thereto, Binder 10 at 001901 - 001907 (August 11, 2006 Decision)), and then was carried forward on probationary status under ACICS procedures through August 2007 to allow UNVA

---

[5] UNVA has consistently made much of the fact that it does not participate in the Title IV program.  Now, however, it seems to indicate that the loss of accreditation could impact it if it ever seeks Title IV funding.  First, that is not an immediate, identifiable harm, as UNVA does not participate in Title IV, has not lost Title IV funding, and cannot establish that it would have otherwise qualified for Title IV funding.  Second, it is somewhat disingenuous to raise that as a "harm" at this point when UNVA has proudly stated throughout this process that it was not reliant upon Title IV funding.

[6] Similarly, UNVA cites to *Florida College of Business v. Accrediting Council for Independent Colleges and Schools*, 1996 U.S. Dist. LEXIS 20426 (S.D.Fla. 2006), which was another case in which the federal funding issue was a major factor in the court's decision to grant injunctive relief.  *See id.* at *10 - *11.

time to try to bring itself into compliance with the accreditation standards (*see* Moody

Declaration at ¶ 14 and Exhibit C thereto, Binder 23 at 006445 - 006450 (December 13, 2006

Decision)).   UNVA's accreditation was thus tenuous, at best, for over a year prior to the final

decision to affirm the denial of reaccreditation on October 5, 2007.  It's "reputation," therefore,

for over a year was one of a school whose accreditation was far from certain.

UNVA's probationary status was published and known to students and prospective

students. *See Accreditation Criteria* § 2-3-804, appended as Exhibit A to Moody Declaration

(requiring that notice of probation be made to the public and to current and prospective students).

It is true that UNVA's status has changed.  It has changed from a school whose accreditation was

in jeopardy for over a year to one whose reaccreditation has now been finally denied.  That is far

different from a school whose status changes from fully accredited and in good standing to one

without accreditation.  UNVA's change in status was foreseeable and was neither immediate nor

irreparable.  Any students who came to UNVA during the prior year did so with full knowledge

of the risk that UNVA's accreditation would terminate.  UNVA's efforts to equate itself with

institutions that are fully accredited and in good standing and then, all of a sudden, lose their

accreditation are not supported by the factual history in this case.  In short, there has been no

immediate and irreparable harm to UNVA's reputation, as that reputation was already one of

noncompliance with the standards and in clear danger of loss of accreditation.

Further, UNVA has stated that it was established in 1998 and received its initial grant of

accreditation in April 2003.  *See* UNVA Memorandum at 2, 3.  The institution, therefore,

operated successfully for five years without ACICS accreditation.  Now, however, UNVA seems

to be claiming that, although it has done so in the past, it for some reason cannot now continue to

operate without ACICS accreditation.   There is no evidence to support that contention.

Moreover, UNVA is eligible to immediately reapply for a new grant of ACICS accreditation, and it is eligible to seek accreditation from other accrediting bodies.   Therefore, the loss of accreditation will likely be temporary, and there is no evidence to support the apparent contention that UNVA will somehow be unable to survive the loss of ACICS accreditation.

Losing accreditation certainly presents challenges to any institution.   Under the circumstances of this case, however, where the institution's accreditation was in danger for over a year, the institution will not lose any federal funding, the institution has successfully operated without accreditation in the past, and the institution is immediately eligible to apply for a new grant of accreditation, the loss of accreditation does not rise to the level of immediate and irreparable harm to justify the extraordinary remedy of injunctive relief.   Accordingly, UNVA has failed to demonstrate that if this Court denies the requested injunctive relief it will suffer irreparable injury, and UNVA's motion for preliminary injunction should therefore be denied.

**C.**     **UNVA Has Failed To Prove That Threatened Injury To Itself Outweighs Whatever Damage The Imposed Injunction May Cause To ACICS**

Contrary to UNVA's assertions, ACICS will suffer harm if the Court awards UNVA the relief it seeks.   Most significantly, ACICS will be required to recognize an institution that does not meet its accreditation criteria.   That runs contrary to the single most important function performed by ACICS.   ACICS's sole purpose is to provide accreditation to institutions of higher education that satisfy ACICS's high standards.   Forcing ACICS to recognize a school that does not meet those criteria obviously harms ACICS's reputation as an accrediting body that adheres to and enforces its standards and criteria.   Moreover, the forced recognition of a school that does not meet the criteria dilutes ACICS recognition of schools that do meet ACICS's standards. ACICS recognition only has value if it is known throughout the education community that it is

granted only to qualifying schools, and UNVA is not a qualifying school.

Further, if ACICS is required to accredit an institution that does not meet its standards, it faces the possibility of individual or class action suits by UNVA's students. Accrediting agencies around the country have been faced with lawsuits alleging "negligent accreditation" and misrepresentations on the part of accrediting agencies.[7] Such lawsuits allege that accrediting agencies are liable for money damages to students for representing that accredited schools met the standards of accreditation when in reality the school failed to provide an adequate education. The primary impetus of these lawsuits is the contention that accrediting agencies, by not acting quickly enough to suspend, revoke, or deny the accreditation of deficient schools, are causing students to receive a deficient education and to incur costs for an education that will be a "sham." The forced recognition of UNVA will expose ACICS to such claims, as ACICS has already determined that UNVA does not meet the standards.

Moreover, ACICS's status as a recognized accrediting agency by the Secretary of Education may be in jeopardy if ACICS accreditation is granted to schools that do not meet the criteria. UNVA's eligibility for accreditation has been thoroughly reviewed by ACICS in a process that extended for more than a year. *See* Moody Declaration at ¶¶ 10 - 17 and Exhibit C thereto at Binders 1 - 28. At the conclusion of that process, which included site visits, multiple hearings before the Council, and a hearing before the Review Board, it was found that UNVA does not satisfy the accreditation standards in several material respects. *See* Moody Declaration at ¶ 16 and Exhibit C thereto, Binder 27 at 007964 - 007966 (August 7, 2007 Decision). Under those circumstances, ACICS should not have to recognize UNVA as an accredited institution.

---

[7] *See, e.g., Armstrong v. Accrediting Council for Continuing Education & Training, Inc.*, 832 F.Supp. 419 (D.D.C. 1993).

*See Accreditation Criteria*, Title II, Chapter 3 Introduction (requiring that accrediting agency take prompt adverse action against any institution that is not in compliance with the standards); *see also* 34 CFR § 602.20 (containing same requirement).   ACICS was required to notify the Department of Education at the same time it issued the final decision denying accreditation to UNVA, and it would be required to notify the Secretary of any order reinstating UNVA's accreditation.  *See* 34 CFR § 602.26.  Should ACICS accredit institutions such as UNVA that do not meet ACICS standards, the Secretary of Education could determine that ACICS is not properly carrying out its function as an accreditation agency and could therefore revoke his recognition of ACICS.   That circumstance would be fatal to ACICS's mission and would jeopardize access to federal student aid for more than a half million students enrolled at ACICS-accredited institutions.

Accordingly, there will be real and substantial harm to ACICS if UNVA is granted the relief it requests.  The harm suffered goes to the central purpose of ACICS, which is to only accredit those institutions that meet its standards and criteria.  Forcing ACICS to accredit UNVA will cause more harm to ACICS than any alleged harm to UNVA, especially in light of the fact that any alleged harm to UNVA results directly from its own failure to comply with ACICS standards and not because of any conduct on the part of ACICS.

**D.    UNVA Cannot Show A Substantial Likelihood Of Success On The Merits**

As set forth above, the harm to ACICS outweighs any alleged harm to UNVA in this case.  At a minimum, UNVA cannot establish that the balance of harms tips decidedly in its favor.   The closer the harm to the parties is to being equal, the more significant the merits become, since "[a]s the balance tips away from the plaintiff, a stronger showing on the merits is required."  *Direx Israel*, 952 F.2d at 813 (*citing Rum Creek Coal Sales, Inc. v. Caperton*, 926

F.2d 353, 359 (4th Cir. 1991)).  Since UNVA has not made a "clear showing" of irreparable harm

as required by the cases, its burden to establish a likelihood of success on the merits is much

higher.  *See, e.g., Direx Israel*, 952 F.2d at 812-13; *Trustees of the Bricklayer and Stonemasons

Local No. 2 Welfare Fund v. Hudgins*, 2007 U.S. Dist. LEXIS 45168, *4 - *6 (E.D.Va. 2007).

UNVA cannot satisfy that burden.

> ### 1.       Judicial Review Of Private Accreditation Determinations Is Limited

In order to evaluate the question of whether UNVA is substantially likely to prevail on

the merits of this case, one must first consider the appropriate scope of review as applied to

private accreditation.  Plaintiff asserts in its brief that the standard of review follows that

established under the Administrative Procedure Act, and cites to *Thomas W. Cooley Law School*

*v. The American Bar Association*, 459 F.3d 705 (6th Cir. 2006) as support for that principle.  *See*

UNVA Memorandum at 17.  As the *Cooley* Court specifically stated, however, judicial review of

private accrediting bodies is far more limited than even the limited standard of review under the

APA:

> We emphasize, however, that while principles of federal administrative law
> provide guidance in our analysis, judicial review of accreditation decisions is
> more limited than review under the Act.  Although accrediting agencies perform a
> quasi-governmental function, they are still private organizations.  Courts have
> made the policy decision to ensure that these organizations act in the public
> interest and do not abuse their power, but judicial review is limited to protecting
> the public interest.  Recognizing that 'the standards of accreditation are not guides
> for the layman but for professionals in the field of education,' great deference
> should be afforded the substantive rules of these bodies and courts should focus
> on whether an accrediting agency such as the ABA followed a fair procedure in
> reaching its conclusions.

*Cooley*, 459 F.3d at 713 (emphasis added) (citations omitted); *see also Peoria School of*

*Business, Inc. v. Accrediting Council for Continuing Educ. and Training*, 805 F.Supp. 579, 583

(N.D.Ill. 1992) (noting that accreditation decisions are governed by the law relating to

termination of membership in a private association); *Parsons College v. North Central Association of Colleges and Secondary Schools*, 271 F.Supp. 65, 71 (N.D. Ill. 1967) (discussing limited role of judicial review of actions of private associations).

Courts therefore are not free to conduct a *de novo* review or substitute their judgment for that of the educators involved in the accreditation process. *See Cooley*, 459 F.3d at 713*; Wilfred Academy v. Southern Association of Colleges and Schools,* 957 F.2d 210, 214 (5th Cir. 1992); *Medical Institute of Minnesota v. National Association of Trade and Technical Schools,* 817 F.2d 1310, 1314 (8th Cir. 1987). Rather, the review is limited to determining whether the decision "is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence." *Cooley*, 459 F.3d at 712; *see also Foundation for Interior Design Educ. Research v. Savannah College of Art & Design*, 244 F.3d 521, 532 (6th Cir. 2001) ("review of the Foundation's accreditation decision is limited to alleged procedural violations; it does not extend to the substance of the accreditation decision"); *Wilfred Academy*, 957 F.2d at 214; *Medical Inst. of Minnesota,* 817 F.2d at 1314. Finally, review of accrediting agency actions is based on the record before the agency. *See, e.g., Rockland Institute v. Association of Independent Colleges and Schools, Inc.,* 412 F.Supp. 1015, 1018-19 (C.D. Cal. 1976).

In addition, many of the issues raised by UNVA in its Complaint relate purely to the oversight function that rests with the Secretary of Education under the Higher Education Act. *See, e.g.,* 20 U.S.C. § 1099b. As a recognized accrediting agency, ACICS is subject to review and oversight by the Secretary of Education pursuant to a detailed statutory and regulatory scheme. *See id.* It is the Secretary of Education's role, not the Court's, to review the actions of accrediting agencies to determine their compliance with the statutory requirements and to impose any disciplinary measures, which can include limitation, suspension, or termination as a

recognized accrediting body.  *See* 20 U.S.C. § 1099b(l) and (n).  Moreover, to the extent UNVA has raised claims other than the denial of its accreditation, this Court lacks jurisdiction to hear any such claims.  *See* 20 U.S.C. § 1099b(f).  The jurisdiction provision of the Higher Education Act makes it clear that the role of the federal courts is to review only decisions "involving the denial, withdrawal, or termination of accreditation."  *Id.*  UNVA has raised issues beyond that scope, which issues necessarily exceed the limited role of the courts in private accreditation matters.

Thus, this Court should review ACICS's actions regarding UNVA's accreditation to the extent necessary to determine whether they comport with general procedural fairness, which is satisfied if ACICS has followed its own rules and procedures and provided a fair hearing, *i.e.*, notice and an opportunity to be heard.  *See Cooley*, 459 F.3d at 713; *Peoria*, 805 F.Supp. at 583; *Rockland Inst.,* 412 F.Supp. at 1016; *see also Gottlieb v. Economy Stores, Inc.*, 102 S.E.2d 345 (Va. 1958) (discussing Virginia law as to private membership organizations).  As is clearly set forth in the factual history above, as well as in the record that was before ACICS at the time the decision was made, ACICS has complied with its process and UNVA has had more than ample opportunity to be heard.

### 2.    ACICS Will Prevail On The Merits

Given the degree of deference that must be given ACICS in this matter as well as the substantial evidence supporting the action taken by ACICS, there can be little doubt that ACICS will prevail on the merits in this case.  Accordingly, the motion for preliminary injunction should be denied.

**a.      All ACICS Procedures Were Strictly Followed And The Action Taken By The Council Is Supported By Substantial Evidence**

ACICS has extensive policies and procedures in place, and it followed those policies and procedures at every stage in its dealings with UNVA.  UNVA's application for a new grant of accreditation was initially reviewed and denied by the Council at its August 2006 meeting.  *See* Moody Declaration at ¶ 12.  UNVA exercised its right to appeal the denial pursuant to Section 2-3-302 of the *Accreditation Criteria*.  *See* Moody Declaration at Exhibit A.  In connection with that appeal, UNVA was provided the right to a hearing pursuant to Section 2-3-500 of the *Accreditation Criteria*, including the right to submit written materials in advance and to be represented by counsel during the appeal process.  *See* Moody Declaration at ¶¶ 8, 13.  The hearing before the Council took place in November 2006, at which time UNVA was placed on probation through August 2007.  *See* Moody Declaration at ¶¶ 13 - 14.  UNVA was given another opportunity to present written materials in advance of the August 2007 hearing, and again had the option of being represented by counsel during that process.  *See* Moody Declaration at ¶ 15.  The Council acted to affirm the denial of reaccreditation after the August 2007 hearing, and UNVA was given the right to appeal that denial to the Review Board pursuant to Section 2-3-600 of the Accreditation Criteria.  *See* Moody Declaration at ¶ 16.  UNVA was given yet another opportunity to present written materials in support of its position, and was represented by legal counsel throughout the Review Board process.  *See* Moody Declaration at ¶ 17.  The Review Board hearing took place on October 2, 2007, and the Review Board's decision affirming the Council's action was issued on October 5, 2007.  *Id.*

From the foregoing it can be seen that UNVA was afforded ample notice and multiple opportunities to be heard, all in accordance with ACICS's established procedures.  The fact that

UNVA may not agree with the decision reached by the Council and affirmed by the Review Board is not grounds for judicial review, as the "courts are not free to substitute their judgment for the professional judgment of the educators involved in such decisions." *Emory College of Puerto Rico, Inc. v. Accrediting Council for Continuing Education & Training*, 1997 U.S. Dist. LEXIS 23487 *6 - *7 (E.D.Va. 1997).   UNVA is essentially asking the Court to review the substantive decision of the Council, which is clearly beyond the scope of judicial review as set forth in detail above.

Further, the voluminous record in this case establishes that the Council's decision is supported by substantial evidence.  *See* Moody Declaration at Exhibit C (28 binders containing the record before the Council).  The Council's August 7, 2007 decision noted 15 remaining citations of noncompliance with the Accreditation Standards, most of which were outstanding from the Council's December 13, 2006 decision.  *See* Moody Declaration at ¶ 16 and Exhibit C thereto, Binder 27 at 007964 - 007966 (August 7, 2007 Decision); Binder 23 at 006445 - 006450 (December 13, 2006 Decision).  Many of those citations in turn dated back to the original decision in August 2006.  *See* Moody Declaration at ¶ 12 and Exhibit C thereto, Binder 10 at 001901 - 001907 (August 11, 2006 Decision).  The Council's brief before the Review Board sets forth in detail the substantial evidence in the record supporting each of the Council's August 7, 2007 findings.  *See* Exhibit C to Moody Declaration, Binder 28 at 008001 - 008018.  The record thus fully supports the Council's determination that, even given a year to meet the standards, UNVA failed at every stage to demonstrate compliance.

### b.        ACICS Has Not Been Arbitrary Or Unfair In Dealing With UNVA

To the extent UNVA raises arguments beyond complaining about the denial of its application for reaccreditation, those additional allegations are without merit.  For example,

UNVA alleges that ACICS did not follow its procedures regarding complaints it received about the institution by issuing show cause directives prior to allowing the institution to respond. *See* Verified Complaint ¶ 13b. Those allegations reflect a misinterpretation of Section 2-3-700 of the *Accreditation Criteria*. *See Accreditation Criteria* § 2-3-700, appended as Exhibit A to Moody Declaration. Indeed, the show cause process is precisely the mechanism by which the agency investigates complaints and by which it obtains information from the institution in response to such complaints. *See id.* There is nothing in Section 2-3-700 that suggests that a response from the institution will be obtained prior to issuing a show cause, as the issuance of a show cause directive is in fact the means by which a response is obtained, and ACICS followed that process in each instance. *See id.*

Similarly, UNVA complains about the "Secret IRC Review Sheets" in connection with the accreditation process. *See* Verified Complaint ¶¶ 42 - 53. These allegations again misrepresent the process detailed in the *Accreditation Criteria*. Section 2-1-602 of the Accreditation Criteria specifically provides that the materials "pertinent to an institution's accreditation are reviewed by experienced persons before being reviewed by the appropriate commission of ACICS." *See Accreditation Criteria* § 2-1-602, appended as Exhibit A to Moody Declaration. This review is performed by the Intermediate Review Committee (hence the term "IRC"), and is specifically designed to allow the IRC to "make a recommendation to ACICS if the evaluation file is complete" or to "organize facts for ACICS but . . . not make a specific recommendation" if the file is not complete. *Id.* Far from being "secret" as alleged by UNVA, these reviews are specifically written into the process and serve to assist the Council as it makes decisions regarding particular institutions, much the way that law clerks assist judges in reviewing facts and law pertinent to particular cases. This is yet another example demonstrating

that ACICS has acted strictly in compliance with its procedures.

UNVA makes similar allegations regarding purported "off-the record communications" between ACICS staff and the Council. *See* Verified Complaint at ¶¶ 42 - 53. Of course, UNVA has offered no support for those allegations. As with its unfounded allegations regarding the IRC review process, which is specifically written into the *Accreditation Criteria*, UNVA's allegations regarding communications with staff are meritless. The ACICS staff provides administrative and functional assistance to the Council. *See* Moody Declaration at ¶ 19. There is no rule or prohibition regarding communications between the ACICS staff and the Council. *See id.* Such a prohibition would be akin to forbidding judges from speaking with their law clerks. The ACICS staff involvement as to UNVA has been no different from the role played by the staff in any other matter. *See id.* The ACICS staff is a resource to the Council, but it does not make accreditation determinations and it does not seek to improperly influence the Council. *See id.* Further, the staff had no interaction with the Review Board, other than making the logistical arrangements and exchanging social pleasantries. *See id.* The Review Board was provided the parties' briefs and the Record Under Review, and the Review Board members met and considered the issues on their own. *See id.* Accordingly, UNVA's allegations regarding improper conduct are demonstrably inaccurate.

UNVA also makes allegations regarding fees it was charged in connection with its ACICS accreditation. *See* Verified Complaint ¶¶ 13e-h, 14h. All institutions, including UNVA, are on notice that ACICS is sustained by fees and charges paid by its member and applicant institutions. *See* Moody Declaration at ¶ 18. The ACICS Bylaws specifically provide for annual sustaining fees, user (or service) fees, and late fees relating to the costs for services associated with membership or application for membership in ACICS. *See* Moody Declaration at ¶ 18 and

Exhibit B thereto, Bylaws Article VI, Sections 3 - 8.  In addition to the Bylaws, ACICS publishes

on its website a schedule of current fees.  *See* Moody Declaration at ¶ 18 and Exhibit E thereto.

Thus, contrary to UNVA's assertions, the fees are specifically authorized and are published for

all to see.  This further demonstrates that UNVA's allegations and efforts to claim that ACICS

has been unfair in its treatment of UNVA are wholly without merit.

Similarly, the Bylaws further provide for payment, in advance, of all costs incurred by

ACICS for site visits.  *See* Moody Declaration at ¶ 19 and Exhibit B thereto, Bylaws Article VI,

Section 7.  Therefore, UNVA's allegation regarding payment in advance of $4,800 for a site visit

to Prague is meaningless, as that charge is specifically authorized.  *See* Moody Declaration at ¶

19.  Moreover, UNVA's assertion at paragraph 13g of the Verified Complaint that the $4,800 fee

was not returned when the Prague visit was cancelled is simply wrong.  *See* Moody Declaration

at ¶ 19 and Exhibit F thereto (copy of the refund check to UNVA).  The site visit was cancelled

due to UNVA's probationary status, and the $4,800 deposit paid by UNVA was refunded upon

such cancellation.  *See id.*  This is yet another example of UNVA attempting to paint of picture

of poor treatment by ACICS, when in fact ACICS has acted at all times in accordance with its

*Accreditation Criteria* and Bylaws.

### c.      UNVA's Constitutional Claim Cannot Survive

In addition to prevailing on Counts I through III of the Verified Complaint for the reasons

detailed above, ACICS is extremely likely to prevail as to Count IV, which alleges a denial of

Constitutional due process.  *See* Verified Complaint ¶¶ 84 -87.  Courts have repeatedly held that

accrediting bodies are not governmental actors and are therefore not subject to Constitutional

scrutiny.  *See Emory College*, 1997 U.S. Dist. LEXIS 23487 at *8 - *9 (holding that agency is an

independent, private corporation); *Peoria*, 805 F.Supp. at 582 (holding that agency's

accreditation function does not constitute state action).  That analysis applies equally to the facts of this case, as ACICS is a private, independent accrediting body whose decisions do not constitute state actions.  Accordingly, UNVA cannot prevail on its Constitutional due process claim.

In short, ACICS is very likely to prevail on the merits of this case in all respects.  The case law overwhelmingly favors ACICS in circumstances where, as here, ACICS has rigorously followed its own procedures and its determination is supported by a substantial record.  There has been no arbitrary or unfair treatment of UNVA by ACICS.  Accordingly, UNVA cannot prevail on the merits and its motion for preliminary injunction should therefore be denied.

**E.**     **UNVA Has Failed To Demonstrate That The Injunction, If Issued, Would Be In The Public Interest.**

In order to prevail on a request for injunctive relief, UNVA is required to show that the requested injunction, if issued, would not be adverse to the public interest.  UNVA has not and cannot make any such showing.  As an initial matter, it is not in the public interest to force an accrediting body to continue to recognize a school of higher education when that school has been found not to be in compliance with the accreditation standards.

In addition, UNVA had a pending show cause outstanding regarding financial concerns at the time its application for reaccreditation was denied.  *See* Moody Declaration at ¶ 21 and Exhibit G thereto.  On August 7, 2007, the same day as the decision to affirm the denial of reaccreditation, a financial show cause was issued to UNVA as a result of the institution's failure to submit annual financial reports for its branch campuses as required by the *Accreditation Criteria*.  *See id.*  Further, there are significant concerns regarding the annual financial report that was submitted for the main campus.  *See id.*  Moreover, ACICS continues to receive complaints

from students in this country and abroad regarding various alleged misrepresentations by UNVA

regarding its programs and recognition of degrees issued by it.  *See* Moody Declaration at ¶ 22.

Accordingly, should ACICS be forced to continue UNVA's grant of accreditation, UNVA

would immediately be under a financial show cause, and ACICS would have to resume

investigation into a variety of complaints regarding the institution.  Those are issues above and

beyond the already significant issues that led to the denial of reaccreditation by the Council.

Given those circumstances, continued accreditation of UNVA would not be in the public interest,

and injunctive relieve should therefore be denied.

**F.**    **If The Court Is Inclined To Grant Plaintiff's Motion For Preliminary Injunction, A Substantial Bond Should Be Posted**

As set forth above, ACICS is a nonprofit membership organization.  ACICS's members

consist of educational institutions throughout the country.  In an effort to protect these innocent

member institutions from incurring unnecessary costs relating to this type of litigation, ACICS

included in its Bylaws a provision that requires that members or former members of ACICS

reimburse ACICS for all costs and expenses (including attorney's fees) actually and reasonably

incurred by ACICS in defending any suit, claim or proceeding whether for damages or injunctive

or declaratory relief brought by a member or former member.  This provision places the expense

of ACICS's defense on the institution bringing the suit against ACICS as opposed to innocent

members of ACICS who have no involvement in the case.  *See* Moody Declaration at Exhibit B,

Bylaws, Article IX, Section 2.

Further, Rule 65(c) of the Federal Rules of Civil Procedure specifically states that no

restraining order or preliminary injunction shall issue except upon the giving of security by the

applicant in a sum that the court deems proper for the payment of costs and damages incurred by

the party that is wrongfully enjoined.

ACICS has and will continue to incur costs and expenses (including attorney's fees) to defend itself in this case.  UNVA contends that if ACICS prevails, it may go out of business.  If UNVA's contention is true and ACICS prevails, it will be awarded an uncollectable sum of attorney's fees.  Therefore, unless the Court imposes a substantial bond requirement under Fed. R. Civ. P. 65(c), ACICS's innocent member institutions will be left paying ACICS's defense costs despite the requirements contained in the Bylaws.

In what is believed to be the most recent case of this kind heard by this Court, *Emory College of Puerto Rico, Inc. v. Accrediting Council for Continuing Education & Training*, 1997 U.S. Dist. LEXIS 23487 (E.D.Va. 1997), the Court set a bond at the outset in the amount of $10,000.  *See Emory College of Puerto Rico, Inc. v. Accrediting Council for Continuing Education & Training*, Civil Action No. 97-1416-A, Temporary Restraining Order (E.D.Va. September 11, 1997).  In that case, the accrediting body prevailed on summary judgment and was ultimately awarded approximately $36,000 in legal fees.  *Emory College of Puerto Rico, Inc. v. Accrediting Council for Continuing Education & Training*, 1997 U.S. Dist. LEXIS 23487 (E.D.Va. 1997).  Due to the school's financial condition, however, the institution was only able to recover on the bond, which was substantially less than the fee award, and therefore suffered a significant financial impact despite prevailing on the merits of the case and obtaining a ruling its favor regarding fees and costs.

The *Emory College* fee award was made approximately ten years ago, and litigation costs have increased significantly since that time.  Accordingly, if the Court is inclined to award UNVA a preliminary injunction, ACICS anticipates that it will incur legal fees and costs of at least $75,000.00, and therefore respectfully requests that a bond of not less than $75,000.00 be

required to protect ACICS and its members.

## CONCLUSION

UNVA was accorded a fair and impartial process.  It was determined after two on-site visits, three reviews by the Council, and an appeal hearing before the Review Board that UNVA did not meet ACICS's standards.  That decision is supported by substantial evidence.  UNVA has not established that it will suffer immediate, irreparable harm, and it cannot establish that it has a substantial likelihood of success on the merits.  Accordingly, its Motion for Preliminary Injunctive Relief should be denied.

WHEREFORE, for the reasons set forth herein, Defendant Accrediting Council for Independent Colleges and Schools respectfully requests that this Honorable Court deny Plaintiff's Motion for Preliminary Injunctive Relief, award Defendant its costs for having to defend this matter, including reasonable attorney's fees, and award Defendant such other and further relief as the Court deems just and proper.


Respectfully submitted,

**ACCREDITING COUNCIL FOR
INDEPENDENT COLLEGES AND SCHOOLS**
By counsel

_____/s/ Michael C. Gartner_____
Michael C. Gartner, Esquire (Va. Bar No. 41463)
Kenneth J. Ingram, Esquire (Va. Bar No. 21293)
WHITEFORD, TAYLOR & PRESTON, LLP
3190 Fairview Park Drive, Suite 300
Falls Church, Virginia 22042
(703) 573-1217 (voice)
(703) 573-1287 (facsimile)
mgartner@wtplaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing was served through the Court's electronic filing system this 2nd day of November, 2007 to:

R. Scott Caulkins, Esquire
Lee Goodman, Esquire
LeClairRyan
225 Reinekers Lane, Suite 700
Alexandria, Virginia 22314

                    _____/s/ Michael C. Gartner_____

                    Michael C. Gartner, Esquire (Va. Bar No. 41463)

                    WHITEFORD, TAYLOR & PRESTON, LLP

                    3190 Fairview Park Drive, Suite 300

                    Falls Church, Virginia 22042

                    (703) 573-1217 (voice)

                    (703) 573-1287 (facsimile)

                    mgartner@wtplaw.com

                    *Counsel for Defendant Accrediting Council for*
                    *Independent Colleges and Schools*

*1188*