UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| THE UNIVERSITY OF<br>NORTHERN VIRGINIA, INC.<br><br>        Plaintiff,<br><br>v.<br><br>ACCREDITING COUNCIL FOR<br>INDEPENDENT COLLEGES AND<br>SCHOOLS<br><br>        Defendant. | Civil Action No. 1:07cv1057 |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S PARTIAL MOTION TO DISMISS**

Plaintiff, The University of Northern Virginia, Inc. ("UNVA"), respectfully submits this Opposition to the Partial Motion to Dismiss filed by Defendant, Accrediting Council of Independent Colleges and Schools ("ACICS").

**INTRODUCTION**

UNVA's Verified Complaint against ACICS contains four counts. ACICS's Partial Motion to Dismiss seeks to dismiss Counts I and IV.[1] In Count I, UNVA alleges that ACICS breached its contractual and common law duties during the parties' relationship. In Count IV, UNVA alleges that ACICS violated UNVA's constitutional due process rights in the denial of accreditation.

ACICS mischaracterizes Count I as an attempt by UNVA to assert a private right of action under the Higher Education Act of 1965 ("HEA") and argues that the allegations of Count I are beyond the subject matter jurisdiction of this Court. Count I is not a claim under the HEA.

---

[1] ACICS has filed an Answer to Count II (Breach of Contract/Violations by ACICS of its Own Rules in Denying UNVA Accreditation) and Count III (Violation of UNVA's common law due process rights).

Count I asserts that ACICS breached its contractual and common law duties owed to UNVA by breaching its own standards and procedures, as well as representations it made to UNVA, throughout the two organizations' three-year association, involving matters that were separate and distinct from the denial of accreditation in August of 2007.  A breach of contract claim is perfectly proper, both within the context of accreditation cases and under Fourth Circuit case law, and ACICS's Motion to Dismiss Count I should be denied.

Regarding Count IV, ACICS argues that because it is not a state actor, constitutional due process principles do not apply.  ACICS's Motion to Dismiss Count IV should be denied based upon recent precedent that has expanded the definition of state action under the Due Process Clause and because UNVA is entitled to discovery on the degree of entwinement between ACICS and the federal government.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).  Given the Federal Rules' emphasis on notice pleading and broad discovery, "consideration of a motion to dismiss must account for the possibility that a noticed claim could become legally sufficient if the necessary facts were to be developed during discovery." Teachers' Ret. Sys. v. Hunter, 477 F.3d 162, 170 (4th Cir. 2007). Hunter observed the Supreme Court's admonition that "a court may dismiss a complaint only if it is clear that no relief could be granted *under any set of facts that could be proved consistent*

*with the allegations*." Teachers' Ret. Sys. v. Hunter, 477 F.3d at 170 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (emphasis added)).

Therefore, Count I and IV could be dismissed only if, after taking all allegations and reasonable inferences in the Verified Complaint as true, the Court finds it clear that no relief could be granted under any set of facts alleged in the Verified Complaint. ACICS's Partial Motion to Dismiss fails this standard and must be denied.

## **ARGUMENT**

**I.    In Count I, UNVA states a claim for breach of contract, rather than a claim to enforce the provisions of the HEA.**

In Count I, UNVA alleges that ACICS breached its contractual and common law duties to UNVA throughout their association and outside the re-accreditation process (by comparison, Count II concerns ACICS's breaches of contractual duties *during* the re-accreditation process). Count I sets forth a history of arbitrary and unfair treatment of UNVA by ACICS that breached ACICS's contractual and common law duties to comply with its own substantive and procedural rules.

ACICS has conceded that the "relationship between the accrediting association and the educational institution is one of private membership contract between an association and its members." (*See* ACICS's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Preliminary Injunctive Relief, p. 5). In Count I, UNVA alleges that ACICS breached the "private membership contract" between ACICS and UNVA, a contract that required ACICS to follow its own policies and procedures and fulfill its commitments to UNVA. Specifically, in Count I, UNVA alleges that ACICS breached its contractual duties to UNVA in several ways, including but not limited to:

3

(1) investigating illegitimate complaints about UNVA in violation of the Accreditation Criteria (Complaint, ¶13a);

(2) failing to notify UNVA when ACICS received and investigated legitimate complaints in violation of the Accreditation Criteria (Complaint, ¶13b);

(3) issuing invalid "show cause" directives against UNVA in violation of the Accreditation Criteria and ACICS Complaint Procedures and forcing UNVA to pay unwarranted monetary fines to vacate the directives (Complaint, ¶13d-e);

(4) not following its own criteria with regards to UNVA's application to open a campus in Prague, resulting in an eight month delay in the opening of the campus and financial loss to UNVA (Complaint, ¶13f); and

(5) offering UNVA the full support of ACICS with regards to UNVA's international partnerships, then withdrawing that support and even punishing UNVA for offering the international partnerships even though ACICS had no clearly defined rules concerning or prohibiting UNVA's international partnership activities (Complaint, ¶14).

These allegations more than state a claim upon which relief can be granted by this Court.

    A.    <u>State Law Claims Are Properly Stated Against Accrediting Organizations</u>.

State law claims are routinely asserted in conjunction with due process claims in accreditation denial cases. See e.g., <u>Fine Mortuary College, LLC v. Am. Bd. of Funeral Serv. Educ., Inc.</u>, 473 F. Supp. 2d 153 (D. Mass. 2006) (tortious interference with prospective economic advantage and defamation claims asserted); <u>Emory College v. Accrediting Council for Continuing Educ. & Training, Inc.</u>, 1997 U.S. Dist. LEXIS 23487 (E.D. Va. 1997) (breach of contract and breach of fiduciary duty claims asserted); <u>Massachusetts Sch. of Law v. ABA</u>, 1997

4

U.S. Dist. LEXIS 7033 (D. Mass. 1997) (breach of contract and fraud claims asserted).[2]  A violation of accreditation by-laws or procedures "is akin to a breach of contract." Chicago Sch. of Automatic Transmissions v. Career College Ass'n, 1994 U.S. Dist. LEXIS 4105 (N.D. Ill. 1994) (citing Dannhausen v. Business Publications Audit of Circulation, Inc., 797 F.2d 548, 552 (7th Cir. 1986)).  A breach of contract action can be proved by showing the association failed to follow its own by-laws or procedures and that this alleged failure injured the institution. Dannhausen, 797 F.2d at 551.

ACICS mistakenly argues that Count I seeks to privately enforce the HEA, which is solely within the regulatory province of the Secretary of the U.S. Department of Education, and thus is beyond the subject matter jurisdiction of this Court.  ACICS makes this leap by mischaracterizing Count I as relating "entirely to the manner in which ACICS follows its procedures and conducts itself as an accreditation agency."  Under ACICS's overbroad theory of the HEA's preemptive reach, however, ACICS would be immune from almost all contractual, common law and tort liabilities when it mistreats a member of its association financially, tortiously or otherwise.  Member institutions like UNVA would not be afforded any legal redress for such harms that do not directly involve an accreditation denial, withdrawal, or termination. That is simply not the law.

Count I is not a claim under the HEA.  ACICS states that "recognition by the Secretary [of Education] means there has been a finding that the [accrediting] agency is a reliable authority regarding the quality of education or training offered by a particular institution.  (ACICS's Memorandum in Support of Motion to Dismiss, p. 6).  UNVA agrees.  ACICS further states that the regulations promulgated under 20 U.S.C. §1099b set forth "specific and detailed

---

[2] The dismissal of such claims at the summary judgment stage does not mean they fall short for failure to state a claim under Rule 12(b)(6).

requirements that must be consistently met by an accrediting agency in order to maintain its recognition." (ACICS's Memorandum in Support of Motion to Dismiss, p. 6.) UNVA agrees that these requirements must be consistently met by ACICS in order for ACICS to maintain its recognition *with the Secretary of Education*. However, all of that misses the mark when it comes to whether UNVA has stated a cause of action in Count I. UNVA does not allege in Count I that ACICS should lose its recognition with the Secretary of Education; rather, UNVA alleges in Count I that ACICS's disregard of its policies and procedures breached its contractual duties *to UNVA*.

      B.      <u>State Law Claims Based Upon Federal Standards In Contracts Are Proper</u>.

In addition to breaches of its published policies and procedures outlined above, ACICS also made express representations to UNVA regarding certain standards to which it would adhere in its treatment of UNVA. ACICS's own Accreditation Criteria, its By-Laws, and its website and other materials, state that ACICS adheres to the U.S. Department of Education procedural requirements, thereby incorporating those requirements into its own rules governing its relationship with UNVA. (Complaint, ¶ 25). ACICS also represented to UNVA that it adheres to standards prescribed by the Council on Higher Education Accreditation ("CHEA"). (Complaint, ¶ 25). To the extent that ACICS incorporated U.S. Department of Education standards into its own contractual documents and UNVA claims that ACICS breached those contractual standards, that does not amount to a private action under the HEA and does not bar the state law claim for breach of contract. ACICS's argument that UNVA cannot assert state law claims implicating the HEA fails in light of the Fourth Circuit's ruling in <u>College Loan Corp. v. SLM Corp.</u>, 396 F.3d 588 (4th Cir. 2005).

In College Loan Corp., the Fourth Circuit expressly rejected the contention that because the Secretary of Education is authorized to enforce the HEA, private parties somehow obstruct the "federal scheme" by basing their state law claims on violations of the HEA. Id. at 598. The Court noted:

> This point is particularly obvious in relation to [Plaintiff's] contract claim. As parties to the Agreement, [Plaintiff and Defendant] voluntarily included federal standards (the HEA) in their bargained-for private contractual arrangement. Both *expressly agreed* to comply with the HEA. In that context, [Defendant's] argument that enforcement of the Agreement's terms is preempted by the HEA boils down to a contention that it was free to enter into a contract that invoked a federal standard as the indicator of compliance, then to proceed to breach its duties thereunder and to shield its breach by pleading preemption. Id. at 598.

There, the plaintiff alleged several state law claims against the various defendants, including breach of contract. Id. at 593. The defendant moved to dismiss under Rule 12(b)(6) for failure to state a claim, contending that the plaintiff's claims "constituted an impermissible effort to assert private rights of action under the HEA."[3] Id. On appeal, the plaintiff asserted that "the district court erred when it ruled that [the plaintiff] was not entitled to utilize evidence that SLM had violated the HEA and its regulations to satisfy elements of the state law claims." Id. at 597. The Fourth Circuit agreed, holding that the district court "erred in ruling that [the plaintiff] could not utilize violations of federal law to establish its state law claims." Id. at 589. The Court noted that because "Congress deemed it necessary to specifically preempt certain state laws, it is clear that Congress could not have intended the HEA to so 'occupy the field' that it would automatically preempt *all* state laws." Id. at 596, Footnote 5 (quoting Cipollone v. Liggett Group, Inc., 505 U.S. 504, 517 (1992)). The Court concluded that the "HEA and its regulations do not preempt the state law claims which [the Plaintiff] seeks to pursue." Id. at 599. Indeed, the Court even noted "state tort suits" brought against accrediting agencies as an example of claims

7

that are not preempted by the HEA. Id. at 598, Footnote 8 (citing Keams v. Tempe Tech. Inst., 39 F.3d 222, 227 (9th Cir. 1994)).

The HEA does not purport to preempt a state law claim against an accrediting organization for its breaches of contract or other tortuous acts directed at one of its members. Section 1099b(f) of the HEA provides:

> (f) Jurisdiction. Notwithstanding any other provision of law, any civil action brought by an institution of higher education seeking accreditation from, or accredited by, an accrediting agency or association recognized by the Secretary for the purpose of this title and *involving the denial, withdrawal, or termination* of accreditation of the institution of higher education, shall be brought in the appropriate United States district court. (emphasis added)

UNVA has brought just such an action involving the "denial, withdrawal, or termination of accreditation" in Counts II through IV of this lawsuit. UNVA properly brought those claims before this Court, the appropriate United States district court. Section 1099(f) in no way prohibits UNVA from asserting other *state law* claims against ACICS in the same lawsuit.

Here, ACICS seeks to make the same argument that was rejected by the Fourth Circuit in College Loan Corp.: that ACICS was free to enter into a contract with UNVA that incorporated standards written by the federal government, that ACICS was free to breach its duties thereunder, and that ACICS can breach the standards set forth in its contract because their origin was a federal regulation. Moreover, ACICS also is alleged to have breached many other contractual provisions – provisions that are not derived from federal regulations – throughout its association with UNVA. UNVA has properly brought its state law breach of contract claim before this Court, as well as its claims involving the "denial, withdrawal, or termination" of accreditation. Therefore, the Partial Motion to Dismiss as to Count I should be denied.

---

[3] College Loan Corp. involved the Federal Family Education Loan Program, Title IV of HEA, 20 U.S.C. §§ 1071 to 1087-4.

## II. UNVA's constitutional due process claim should not be dismissed, particularly given the Supreme Court's expanded definition of "state action."

Count IV of the Verified Complaint alleges a violation of UNVA's constitutional due process rights. Historically, courts addressing constitutional due process violation claims asserted against accrediting agencies have determined that the agencies were not state actors such that the actions of the agencies must be regarded as the actions of the government itself. As noted in UNVA's brief in support of its motion for preliminary injunction, this Court has ruled in similar fashion in Emory College of Puerto Rico, Inc. v. Accrediting Council for Continuing Education & Training, 1997 U.S. Dist. LEXIS 23487 (E.D. Va. 1997). However, this is not a settled area of the law, particularly in light of the subsequent Supreme Court decision of Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288 (2001), which expanded the definition of what constitutes a state actor for constitutional due process purposes. The test for whether a defendant should be considered a state actor for constitutional due process purposes is factually driven and, particularly at the motion to dismiss stage, the claim should not be dismissed.

On the one hand, ACICS seeks to dismiss Count I, arguing that because of the pervasive oversight and regulation imposed upon ACICS under the HEA, the alleged misconduct of ACICS is exclusively in the hands of the Department of Education and UNVA cannot assert its claim against ACICS. On the other hand, ACICS argues that ACICS is not a state actor for purposes of constitutional due process claims. These internally inconsistent positions are indicative of the unsettled nature of the law in this area, particularly post-Brentwood.

In its arguments to dismiss Count I, ACICS discusses at length the various statutes, regulations, requirements, and internal procedures the Secretary of Education imposes on

9

ACICS.[4]  (See ACICS Memorandum of Points and Authorities in Support of Its Partial Motion to Dismiss ("ACICS Memorandum"), pp. 5-7.)  ACICS's Memorandum further acknowledges that it is clear that "oversight and review of accrediting agencies" is performed by the federal government and that ACICS is subject to "continuous and on-going oversight and review by the Secretary."  (ACICS Memorandum, p. 7.)  Should ACICS be found non-compliant with the Department of Education regulations, the Secretary may limit, terminate, or suspend recognition of ACICS.  (ACICS Memorandum, p. 7.)  ACICS's own brief and the specific factual circumstances of this case demonstrate the control the Department of Education has on ACICS and its future as an accrediting agency.

Prior to 2001, the leading Supreme Court case regarding whether state action is present in the decisions of a private entity was Blum v. Yaretsky, 457 U.S. 991 (1982).  The Court first noted that "[t]he complaining party must also show that 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'"  457 U.S. at 1004.  (citing Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)).  In Blum, the Court held that state action normally can be found present in the actions of a private entity "only when [the State] has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."  Id.  Also, the Court said that state action can be found "if the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.'"  Id. (citing Jackson at 353).

---

[4] Federal recognition of accrediting agencies is laid out in 20 U.S.C. § 1099(b).  Section 1099(b)(a) provides that "no accrediting agency or association may be determined by the Secretary to be a reliable authority as to the quality of education or training offered for the purposes of this Act or for other Federal purposes, unless the agency or association meets criteria established by the Secretary pursuant to this section."  Section 1099(b) further lays out that criteria and the operating procedures required for accrediting agencies.  Finally, § 1099(b)(l) provides for the "limitation, suspension, or termination" of recognition for an accrediting agency if such criteria and operating procedures are not followed.

In 2001, the Supreme Court decided the case of Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288 (2001).[5] Brentwood was a 42 U.S.C. § 1983 case in which a not-for-profit athletic association was sued by one of its member schools that claimed the association's enforcement of a rule constituted state action that violated the First and Fourteenth Amendments of the Constitution. Brentwood, 531 U.S. at 291-292. The Court noted that "the character of a legal entity is determined neither by its expressly private characterization in statutory law, nor by the failure of the law to acknowledge the entity's inseparability from recognized government officials or agencies." Id. at 296. The Court discussed the "range of circumstances" that could point to state action masquerading in the actions of individual entities and concluded that "no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient." Id. at 295. The Court then articulated the "pervasive entwinement theory" whereby when the "relevant facts show pervasive entwinement [between the government and the private entity] to the point of largely overlapping identity," there is an implication of state action. Id. at 303. The Court further pointed out that this implication is "not affected by pointing out that the facts might not loom large under a different test." Id. Finally, "entwinement will support a conclusion that an ostensibly private organization ought to be charged with a public character and judged by constitutional standards." Id. at 302.

Brentwood marked a significant extension of the state-action doctrine. See Brentwood, 531 U.S. at 305 (Thomas, J., dissenting). Brentwood expanded the Blum and earlier tests for determining whether state action exists, adding the concept that "pervasive entwinement"

---

[5] ACICS's sole reference to Brentwood is in a footnote, in which ACICS argues that the facts of Brentwood are distinguishable from the instant case. ACICS, however, does not address the Court's legal analysis and the impact of the decision on the constitutional due process analysis in pre-Brentwood cases.

between the state and the private entity constitutes state action. Although not an accreditation case, the principles articulated in Brentwood certainly apply to accrediting agencies such as ACICS. Brentwood suggests that if the Department of Education exercised pervasive control over an accrediting agency, the decisions of that agency would be considered state action. In the instant case, as alleged in the Verified Complaint and reflected in ACICS's own arguments, the Department of Education exercises substantial control over ACICS.

Post-Brentwood, the law on constitutional due process claims in the accreditation arena is unsettled. Since Brentwood, there are two reported decisions addressing constitutional due process claims in accreditation cases in the context of Brentwood. ACICS cites one of the cases: W. State Univ. of S. Cal. v. ABA, 301 F. Supp. 2d 1129 (C.D. Cal. 2004). No doubt ACICS cites W. State Univ. because the court rejected the plaintiff's constitutional due process argument. In that case, the Court cites Brentwood but offers no analysis of its potential impact on prior accreditation cases; then the Court summarily concludes that the "case law does not support Plaintiffs' position" that the ABA was a state actor. W. State Univ. of S. Cal., 301 F. Supp. 2d at 1134. However, the "case law" cited by the Court for its conclusion were accreditation cases all decided pre-Brentwood. Id.

By contrast, the other published post-Brentwood accreditation case – not cited by ACICS – offers a detailed analysis of the pre-Brentwood accreditation decisions and the potential impact of Brentwood on the analysis in those cases. See Auburn Univ. v. S. Ass'n of Colleges & Schs., Inc., 489 F. Supp. 2d 1362, 1365 (N.D. Ga. 2002).

In Auburn, the plaintiff university argued that because of the "intertwining of federal financial aid and the recognition of [the accrediting agency] by the Secretary of Education," the accrediting agency was a state actor and thus bound by the Due Process Clause of the United

States Constitution.  <u>Auburn</u>, 489 F. Supp. 2d at 1365.  The court discussed at length the development of accreditation case law and the substantial degree of the Federal Government's involvement in the accreditation process.  <u>Id</u>. at 1367-1373.  The Court noted that under the HEA, the Secretary of Education has the responsibility of determining whether an accrediting agency should be recognized as a "reliable authority" for the purpose of authorizing receipt of federal funds and the Secretary may promulgate regulations setting forth criteria for such recognition.  <u>Id</u>. at 1368.  The Court also noted that, should an accrediting agency fail to meet that criteria, the Secretary may terminate recognition of the agency.  <u>Id</u>.

The <u>Auburn</u> court noted that the issue before the Court was whether <u>Brentwood</u> alters the traditional constitutional due process analysis in accreditation cases.  After discussing the development of the law in pre-<u>Brentwood</u> accreditation cases, the Court said:

> Here, a primary factor weighing against finding that [the accrediting body] is a state actor is that accreditation has never been a public function. However, the 1992 amendments to the HEA appear to have brought the Secretary of Education in a much closer relationship with the accrediting agencies' actions. As described above, the HEA and accompanying statutes set forth in greater detail the criteria an agency must use in order to be recognized by the Secretary of Education, as well as the agency's operating procedures [citation omitted]. **It may be that the Court's "pervasive entwinement" theory articulated in <u>Brentwood Academy</u> will supercede the legal fiction of courts denying that accrediting agencies are state actors, but declaring them to be "quasi public" organizations bound by "common law due process."** <u>Id</u>. at 1373 (emphasis added). [6]

ACICS urges this Court to consider the analysis set forth in <u>Parsons</u>, <u>Peoria Schools</u>, and <u>Emory College</u>.  (ACICS Memorandum, p. 11); <u>See</u> <u>Parsons College v. North Central Ass'n of Colleges and Secondary Sch.</u>, 271 F. Supp. 65 (N.D. Ill. 1967); <u>Peoria School of Business, Inc. v. Accrediting Council for Continuing Educ. & Training</u>, 805 F. Supp. 579 (N.D. Ill. 1992);

---

[6] In <u>Auburn</u>, the Court ultimately found that the institution was entitled to a "certain degree of due process" from the accrediting body, but did not clearly distinguish between the common law and constitutional due process claims for the source of the due process rights.  <u>Auburn</u>, 489 F.Supp. 2d at 1380.  The Court granted in part and denied in part the defendant's motion for judgment on the pleadings.  Based on the fact that the Court specifically

Emory College of Puerto Rico, Inc. v. Accrediting Council for Continuing Education & Training, 1997 U.S. Dist. LEXIS 23487 (E.D. Va. 1997).  However, those cases were all decided prior to Brentwood and as such obviously do not take the Brentwood analysis into account.  Furthermore, although an accreditation case, Parsons was decided pre-Blum and did not apply the Blum analysis in order to identify state actions and state actors.  Parsons instead looked to whether the accrediting body was an "arm of the government," such that its actions would be equivalent to the actions of the state.  Parsons, 271 F. Supp. at 70.  Finding that the accrediting agency was not part of the government, the Parsons court denied the constitutional due process argument.

Peoria, decided twenty-five years after Parsons, cites the Blum test and the Court found that a sufficient nexus could exist between the accrediting body's actions and the Federal Government if 1) the government exercised coercive power or significant encouragement, or 2) that the accrediting body exercised powers that were traditionally the exclusive prerogative of the government.  Peoria, 805 F. Supp. at 582.  The plaintiff in Peoria argued the second factor, that accreditation is traditionally a function of the government.  Id.  The Court rejected this argument but did not address the "pervasive entwinement theory," which did not come along until ten years later in Brentwood.  Emory cites to Peoria in determining that the nexus between the accrediting body and the federal government was "not close enough" for the accrediting body to be fairly treated as the government itself.  Emory, 1997 U.S. Dist. LEXIS 23487 at *8.  In the wake of Brentwood, courts must look beyond whether the government exercised coercive power and the accrediting body exercised powers that are traditionally the exclusive prerogative of the government.  Brentwood has expanded the traditional test for finding state action by adding the

---

granted the motion with respect to the plaintiff's HEA claim, it appears that the Court denied the defendant's motion for judgment with respect to both the common law and constitutional due process claims.

theory of "pervasive entwinement" and the cases cited by ACICS do not address such pervasive entwinement.

Brentwood provides no bright line defining what degree of pervasive entwinement is required in order to find state action. However, the standard for a Rule 12(b)(6) motion is that UNVA can prove absolutely *no* set of facts in support of its claim entitling him to relief. Edwards, 178 F.3d at 244. This court should also take into account "the possibility that a noticed claim could become legally sufficient if the necessary facts were to be developed during discovery." Hunter, 477 F.3d at 170. Thus, under the Fourth Circuit's standard for a motion to dismiss, it is premature to dismiss Count IV at this stage of the litigation. Throughout its brief, ACICS acknowledges the control the Department of Education wields over it. UNVA alleges such in Paragraphs 25, 58, and 85-87 of the Verified Complaint. A Department of Education official attended the Review Board hearing in October 2007, observing the proceedings. At this point, the purpose of that official attending the hearing is unclear. Subsequently, during the preliminary injunction hearing before this Court, in connection with a discussion about the preliminary injunction order, ACICS's counsel stated, "we have several requirements regarding notification to the Department of Education and to the public that we have to comply with…" (Transcript of Preliminary Injunction Hearing, p. 115, lines 8-11). ACICS acknowledged at the hearing that the Department of Education has oversight over ACICS and discussed the concerns the Department of Education has regarding the procedures for anonymous complaints. (Transcript of Preliminary Injunction Hearing, p. 99, lines 15-19). UNVA has prepared discovery requests designed to explore facts that are relevant to whether there is pervasive entwinement between ACICS and the Department of Education, and what, if any,

15

communications may have occurred between ACICS and the Department of Education pertaining to UNVA.  ACICS's Motion to Dismiss Count IV should be denied.

## **CONCLUSION**

WHEREFORE, for the reasons stated herein, UNVA respectfully requests that this Court deny ACICS's Partial Motion to Dismiss.

>Respectfully submitted,
>
>THE UNIVERSITY OF NORTHERN VIRGINIA, INC.
>By counsel
>
>LECLAIRRYAN
>A Professional Corporation
>
>
>By: _____/s/_____
>R. Scott Caulkins (VSB No. 23584)
>Lee E. Goodman (VSB No. 31695)
>Joanna L. Faust (VSB No. 72930)
>225 Reinekers Lane, Suite 700
>Alexandria, Virginia 22314
>(703) 684-8007 (Telephone)
>(703) 684-8075 (Fax)
>
>***Counsel for Plaintiff, The University of Northern Virginia***

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and accurate copy of the foregoing was served through the Court's electronic filing system this 14th day of December, 2007 to:

Michael C. Gartner, Esq.
Kenneth J. Ingram, Esq.
WHITEFORD, TAYLOR & PRESTON, LLP
3190 Fairview Park Drive, Suite 300
Falls Church, Virginia 22042
*Counsel for Defendant, Accrediting Council of Independent Colleges and Schools*

                                              /s/
                              R. Scott Caulkins (VSB No. 23584)
                              LeClairRyan, A Professional Corporation
                              225 Reinekers Lane, Suite 700
                              Alexandria, Virginia 22314
                              (703) 684-8007 (Telephone)
                              (703) 684-8075 (Fax)
                              scott.caulkins@leclairryan.com
                                    *Counsel for Plaintiff, The University of*
                                                  *Northern Virginia*